## FRANKLIN L. RHOADS, Executor, etc.,

*v.*

## MARTHA H. RHOADS *et al.*

</div>

| 43 | 239 |
|----|-----|
| 123 | 265 |
| 43 | 239 |
| 32a | 521 |
| 43 | 239 |
| 132 | 362 |
| 43 | 239 |
| 152 | 274 |
| 43 | 239 |
| 206 | 17141 |

1. GUARDIAN AD LITEM — *appointment of.* When the record shows the appointment of a guardian *ad litem*, but no motion therefor, nor prayer therefor in the bill, such appointment will be considered the act of the court on its own motion, which it might make, *sua sponte.*

2. SAME — *answer of — not binding on infants.* A guardian *ad litem* cannot bind the infants by any thing he may do, or admit in his answer.

3. SAME — *need not be related to infants.* Under our practice it is not necessary that the person appointed as a guardian *ad litem*, should be a relative of the infants.

4. SAME — *appointment of — on plaintiff's motion.* Where the minors are not brought into court, and one of them is within one year of being of age, it would not be proper to appoint a guardian *ad litem*, on the motion of the plaintiff's counsel, as he is not the person to name such guardian.

5. EXECUTOR — *one appointed as executor, merely, does not become a guardian.* Where a person is named in a will as executor, merely, he does not in virtue of such appointment, become testamentary guardian of the infants.

6. GUARDIAN AD LITEM — *must answer before final decree is entered.* Where a guardian *ad litem* has been appointed, it is error for the court to enter a final decree against the infants without requiring an answer from such guardian.

7. SAME — *must defend the interests of the infants.* The rule is inflexible, that a guardian *ad litem* must defend the interests of the infants as vigorously

as the nature of the case will admit. It is his special duty to submit to the court every question involving the rights of the infants affected by the suit.

8. INFANTS — *rights of — in suits against.* A bill cannot be taken as confessed against infants, under any circumstances, nor their interests decreed away without an answer by their guardian *ad litem*, or on full proof. A default cannot be entered against them, nor can any thing be admitted, but every thing must be proved against infants, and the record must furnish proof to sustain a decree against them, whether the guardian *ad litem* has answered or not.

9. WRIT OF ERROR — *where there are adult and infant defendants.* Where there are adult and infant defendants, and the writ of error is in fact prosecuted by the adults alone, they cannot assign for error those proceedings which only affect the interests of the infants.

10. TESTATOR — *power of disposition of estate unlimited.* Under our statute, the power of the testator to dispose of his estate is unlimited, both as to person and object.

11. SAME — *may pass by his children.* A testator of sound mind may pass by his own children, in making a testamentary disposition of his estate.

12. SAME — *may prescribe the time and mode of enjoyment.* And he may prescribe the time and mode in which the bounty shall be enjoyed, provided, that in so doing, he contravenes no well recognized and admitted principle of public policy, or rule of right.

13. DEVISE — *savoring of a perpetuity.* The law abhors every disposition of property which savors of a perpetuity.

14. SAME — *of executory limitation.* But an executory limitation to a life, or any number of lives, and twenty-one years afterward, is valid.

15. Where a testator disposed of his whole estate, devising it to executors in trust for all of his children, one-half of whom at the time of his death were adults, the proceeds of the estate to be invested and re-invested in government bonds, and at the expiration of fifteen years after the testator's death, the estate, with its accumulations, to be divided equally among them; *held,* that such disposition was clearly within the testamentary power.

16. WILL — *within the power of testator to make — will not be disturbed.* The will being such an one as the testator had the power to make, it will not be disturbed; and devisees under it can only come into the enjoyment of their respective shares, in the mode prescribed by the will.

17. SAME — *when time of payment may be anticipated.* In such a case, a court of chancery, on a proper case being made out, has the power to order the trustee to anticipate the time of payment under the will, so far as it may be necessary for the maintenance of the devisees; but its power extends no further. And such action in no wise tends to subvert the will, the court having the power to do, what it is evident from the will that the testator would do, if he were living.

WRIT OF ERROR to the Circuit Court of Gallatin county; the Hon. WESLEY SLOAN, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. RAUM & CHRISTY, for the plaintiff in error.

Messrs. OLNEY & LANDSEN, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

John T. Jones, of Gallatin county, on the 30th day of March, 1863, made his last will and testament, by the first clause of which, he appointed his widow, Hannah M. Jones, his executrix, and his son-in-law, Franklin L. Rhoads, the plaintiff in error, his executor. By the *second* clause, he directed, that as soon as it could properly be done, his executrix and executor should invest the sum of $25,000, which he then had on hand, in cash, in United States bonds, bearing interest, to be held by them, in trust, for the purpose, and during the period thereafter fixed. By the *third* clause, he directed his executors, as soon as in their judgment it should be proper, to sell certain bonds of the State of Tennessee, which he then had on hand, seventeen in number, and invest the proceeds in interest-bearing bonds of the United States, to be held in trust, as thereinafter specified. By the *fourth* clause, he devised and bequeathed to his executrix and executor, to be held in trust, as thereinafter expressed, certain United States seven-thirty bonds, which he then had on hand, amounting to $25,000, and all his estate and property of every kind and character, rights, money, credits and effects, personalty and real estate; and he, thereby, gave and granted to his executrix and executor full power and authority, to collect any and all the debts due to him in the same manner that he could do himself, and to sell any and all of his personal property, lands or other real estate in such manner, at such times and upon such terms, as they in their judgment and discretion should determine, and to convey, by deed, such lands and other real estate as they might sell under this power. He, also, by the

16 — 43D ILL.

same clause, willed, that all this property, rights, credits and effects, should be held by his executrix and executor, in trust, for and during the period of fifteen years, from and after his death, for the purpose of investing the same, and all money which may be received by them in any way, as the proceeds of sales of land, or other real estate, or personal property, or in the collection of debts, or which might in any manner arise out of his estate, in United States bonds, bearing interest. By the *fifth* clause, he desired, that all interest accruing upon bonds, or in any other way, should be promptly invested in United States bonds, bearing interest, declaring his object to be, to have all his estate, so soon as might be, invested in interest-bearing government bonds, and all accumulations re-invested in the same way, so as to increase his estate as much as possible in the mode indicated, during the existence of the trust, for the benefit of his wife and children; with the distinct understanding, that his executrix and executor should retain in their hands, at all times, sufficient means to provide for the proper support of his wife and her family, and for the education of his youngest children, the amount proper for such purposes to be left to their judgment and discretion. He then declares, that his executrix and executor shall have all the powers and discretion, not therein expressly set forth, necessary to enable them to wind up the business of his estate, and to execute the trust delegated to them, according to the true intent and meaning of his will; but he wished it to be distinctly understood, as expressly enjoined on them, that all investments in bonds or stocks, must be in United States bonds, bearing interest. The *sixth* clause, requires his executrix and executor to pay over at once to William L. Caldwell, his son-in-law, if he should wish to go into business, the sum of $5,000, to be charged against his daughter Mary, as an advancement, etc. He then declares, " At the end of fifteen years from and after his death, the trust, thus created, shall cease, and all his estate then to be distributed among his wife and children in this manner, viz.: The sum of $10,000 to be paid to his wife, to be held by her as her absolute property; the remainder of

his estate to be divided among his children, according to the laws of this State, each one of the children to be charged with such sums as have been or may be charged against them as advancements."

The remaining portions of the will provide merely for executing the trust in case of the death of either the executrix or executor named in the will, or both.

To this will was a codicil, executed on the 31st day of March, 1863, only important as showing the confidence the testator had in the persons appointed to execute the trust, by directing, that neither of them should be required to give any bond or security whatever, for the proper execution of the trust.

The testator died on the 5th day of April, 1863, and his widow Hannah, on the 3d day of September, following. Since her death, the plaintiff in error, Franklin L. Rhoads, as surviving executor, has thus far executed the trusts under the will.

Eight children survived the testator and his widow, five of whom are now adults, and defendants in error, the other three are minors, and are with Franklin L. Rhoads, the plaintiff in error, included in the writ of error.

The adults filed their bill in chancery, in the Gallatin Circuit Court, at the August Term, 1866, setting forth, that the surviving executor had sold all, or nearly all, the personal property, and some of the real estate, and had collected a portion of the debts, and had invested the money, amounting to $120,000, in United States bonds, bearing interest, and also alleging, that of the real estate, there remained unsold forty-five town lots, and fifteen thousand eight hundred and twenty-eight and one-half acres of land; and suggesting, that the minor children cannot be prejudiced by a division of the moneys and bonds and lands of the estate, and that the executor holds notes due the estate, which are available for more than $25,000, some of them due and payable, and others to fall due, and all drawing interest from six to ten per cent, and that the support and education of the minors will not cost more than $10,000, and alleging, that Basil H. Jones, one of the children,

has no means whatever, except his interest in this estate, and has no trade or profession, and has a family to support, and that William L. Caldwell is dead, leaving no property beyond the payment of his debts, and his widow, Mary, one of the complainants, has only about $1,000, besides her interest in this estate, and has a family of three children, the eldest of whom is not ten years of age; they prayed the court that the plaintiff in error, and the minor children should be made defendants, and that they be required to answer the bill, and that the surviving executor shall state fully the then condition of the estate, showing the amount of money and bonds on hand, and the description of the lands belonging to the estate, and that upon a final hearing, the court would direct the executor to pay to each complainant one-eight part of the money and bonds on hand, and require him to make yearly settlements with the County Court, and pay the moneys remaining on hand to the parties entitled thereto, and who may have attained their majority, and as each minor arrives at full age, the executor be required to pay such person his or her interest in those moneys and bonds, deducting the advancements made in all cases; and they also prayed for a partition of the real estate, and for the appointment of commissioners to make partition, and for general relief. William G. Bowman was appointed guardian *ad litem*, for the infant defendants.

The executor filed his answer, admitting all the material facts alleged in the bill, and alleges, he paid William L. Caldwell $5,000 on the 11th of May, 1863, and Basil H. Jones $1,500 on the 31st of May, 1865, in obedience to an order of the court.

The executor denies, that the children of the testator are the only persons who have any interest in the trust fund, and he denies, that each one of them has one-eight part of the same, and submits the question, whether or not the entire estate of the testator does not, by the terms of the will, vest absolutely in the executor, as trustee, for the period of fifteen years from the death of the testator; and whether any part of the property, real or personal, vests in the children prior to the termination

of the trust; and whether the property does not then vest in the children according to the number then living, to be distributed among them, according to such laws of this State as may be then in force.

The executor admits, he has sold nearly or quite all of the personal property, that he has collected some of the debts, and has sold some of the real estate, and has invested the proceeds in bonds, and has on hand $119,000, in United States bonds, bearing interest, and about $1,000 in money. He admits he holds promissory notes, and other evidences of indebtedness, due by divers persons, but cannot say how much is collectable, but believes enough can be collected to support and educate the minor children, and thinks $10,000 will be sufficient for that purpose. He submits to the court, first, whether it is the law, that the trust created by the will can be declared void for the single reason, that no person is to participate in the division of the estate except the children of the deceased; second, whether the trust shall be destroyed, and the estate divided, because one or more of the heirs may, from time to time, be in necessitous circumstances, which could justify the chancellor in relaxing the stringent provisions of the will, by providing relief for those requiring aid, and, finally, shall the trust be destroyed without attacking the will itself, for the mere convenience of a part of the heirs in the absence of a necessity therefor. He admits he has no personal objection to a division of the estate, if consistent with law, and he can be held harmless. He believes the testator, in making the will, had the prosperity of his heirs in view, and that, in carrying out the will, he is actuated by conscientious motives, and will cheerfully conform to orders of the court, but will do no act reflecting upon the validity of the will, or the trust created by it.

The cause was submitted on the bill, answer, exhibits and proofs. During the progress of the cause, the court made an order for the payment to Basil H. Jones of $1,000, and directed the same to be charged to him as an advancement.

The court found, that plaintiff in error had in his hands, as trustee for the eight children of the testator, bonds amounting

to $122,000; that there had been advanced to four of them, various sums of money, amounting in the aggregate to more than $14,000, and the court found, that testator devised all his estate, real and personal, for the use and benefit of his eight children, and that each of them was then entitled to, and was the owner in fee-simple of, the undivided eighth part of the real estate specified.

The court then ordered, that the trustee, plaintiff in error, pay to each of the adults, a sum of money, which, with what they had received, would make the sum $17,000, for each of the infant children, and that the executor, as their testamentary guardian, invest the principal, interest and accumulations of each of these sums of $17,000, in the name, and for the benefit of the infants, respectively, and separately; and as to such sums, the testamentary guardian shall carry out the requirements of the will, until they shall respectively arrive at full age, the boys to the age of twenty-one, and the daughter, Fannie, until she arrives at the age of eighteen years, and as each minor arrives at full age the guardian shall pay the sum of $17,000, with all interest and accumulations to each person. It was further ordered and decreed, that the executor make report to the next term, of his actings and doings as such executor and trustee, showing the assets which have come to his hands, including all moneys, and also what credits he may be entitled to, and the amount of United States bonds, and money then on hand belonging to the trust fund. It was also decreed, that all the lands be partitioned, if partition can be made without great prejudice to the owners, and commissioners were appointed to make such partition, and to report to the next term.

To reverse this decree the record is brought to this court, and the following errors assigned:

1. The court erred in appointing a guardian *ad litem* for the minor defendants, in the absence of a prayer in the bill for the appointment of such guardian.

2. The court erred in not requiring or permitting F. L. Rhoads, testamentary guardian, to defend for said minors.

3. Having appointed a guardian *ad litem*, for the minor

defendants, the court erred in entering a final decree without requiring such guardian to answer for the minors.

4. The court erred in entering a final decree requiring a division of the money and lands of the estate of John T. Jones, deceased, — First, because the validity of the will of deceased was not called in question. Second, because the will of deceased, whereby he bequeathed his entire estate of real and personal property to Franklin L. Rhoads, the plaintiff in error, in trust for fifteen years, for the benefit of the heirs of the deceased, then to be divided among them according to the laws of Illinois, is not contrary to public policy, or in violation of the law. Third, because the title of property so bequeathed by deceased, is vested in the trustee, F. L. Rhoads, and not in the heirs of deceased. Fourth, because in construing the will of deceased, the intention of the testator must be the governing principle; and, before the court could be justified in ordering a division of the estate contrary to the terms of the will, it must appear, that there is some grave necessity compelling such division, and in this case such necessity does not appear to have existed. Fifth, because it was the evident intention of the testator to provide a home for his younger children; and the decree deprives such younger children of a home, by ordering a division of the homestead. Sixth, because it was the evident intention of the testator to provide support and education for the younger children out of the general trust fund; and the court, in dividing the estate, failed to make an order and certain provision to carry out that portion of the will.

5. The court erred in not fixing the compensation of F. L. Rhoads, plaintiff in error, as trustee of said estate.

The errors most important in this assignment, will be noticed, if not in detail, will be so considered, that the views of this court, on the main questions presented, will be fully understood.

As to the first three errors assigned, they relate to the practice in such cases. It appears from the record, that William G. Bowman was appointed guardian *ad litem* for the infant defendants, although there was no prayer in the bill, asking for such an appointment.

It is usual to insert such a prayer in the bill, and it is the better practice. It is not unusual, in the practice of our courts, to make such appointment on motion of either party. This record does not show, that any such motion was made. The only entry therein, on this matter, is, after entitling the cause, this order, " ordered that William G. Bowman, Esq., be appointed guardian *ad litem* for the minor defendants, and it. is further ordered, that the defendants be ruled to answer. And now comes Franklin L. Rhoads and files his answer, and the said Rhoads files his motion for allowance as executor of the estate of John T. Jones, deceased."

The appointment of a guardian *ad litem* is something more than mere form, although such guardian cannot bind the infant by any thing he may do, or admit in his answer, yet we would not be inclined to reverse a decree where the record showed the appointment, but no motion for such appointment, nor prayer therefor in the bill, believing the court might, *sua sponte*, make the appointment.

By the English practice, and in some of the courts of chancery in this country, the appointment is made by the court, of the nearest relative of the infants not concerned in point of interest in the matter in question. This person appointed, William G. Bowman, does not appear by the record to be a relative of the minors, which, under our practice, is not objectionable. If the record showed, that he was appointed on the motion of the complainants, without the minors being brought into court, one of whom was within one year of being of age, this would be contrary to the most approved usage, and be a mark of inexcusable inattention, as the adversary counsel is not the person to name the guardian to defend the infants. Cooper's Eq. 109; *Bk. of U. S.* v. *Ritchie et al.*, 8 Peters, 143; *Knickerbocker* v. *De Freest*, 2 Paige, 304. But, considering it the act of. the court, without the interference of the complainants, and on its own motion, we are not disposed to consider it as error.

How Rhoads became testamentary guardian, we are at a loss to perceive. He is not made so by the testator's will, nor is he

such in virtue of his appointment as executor; of course, then, he could not defend for the minors, and the action of the court was proper in appointing a guardian *ad litem*, but there should be some evidence, that the person appointed accepted the trust, which this record does not furnish. No answer is filed by him, nor plea, nor any defense made of any kind, nor any formal acceptance, one or the other of which should appear on the record. This brings us to the consideration of the third error, that the court having appointed a guardian *ad litem*, erred in entering a final decree without requiring an answer from such guardian.

The rule is inflexible in this State, that the guardian *ad litem* shall make a defense of the interests of the infant as vigorous as the nature of the case will admit. *Sconce* v. *Whitney*, 12 Ill. 150 ; *Enos* v. *Capps*, id. 255. It is understood to be the special duty of such guardian to submit to the court, for its consideration and decision, every question involving the rights of the infant affected by the suit. This is the scope of the decisions in those cases above referred to, and is so distinctly announced in *Dow* v. *Jewell*, 1 Foster (N. H.) 486, and in *Knickerbocker* v. *DeFreest*, 2 Paige, 304, cited *supra*. A bill cannot be taken as confessed against infants under any circumstances, nor their interests decreed away without an answer by the guardian *ad litem*, or on full proof. Nor can a default be entered against them. *McClay, Administrator,* v. *Norris*, 4 Gilm. 370 ; *Cost* v. *Rose*, 17 Ill. 276 ; *Chaffin* v. *Heirs of Kimball*, 23 id. 36 ; and it is further held, that nothing can be admitted, but every thing must be proved, against an infant. *Hitt* v. *Ormsbee*, 12 id. 166 ; *Hamilton* v. *Gilman*, id. 260 ; *Tuttle* v. *Garrett*, 16 id. 354 ; *Reddick* v. *President of the State Bank*, 27 id. 148 ; and strict proof is required, and the record must furnish proof to sustain a decree against them, whether the guardian *ad litem* answers or not. *Masterson* v. *Wiswould et ux.*, 18 id. 48 ; *Chaffin* v. *Heirs of Kimball, supra* ; *Tibbs* v. *Allen*, 27 id. 129.

It may be said by defendants in error, that this proceeding, and the decree thereon, were for the benefit of the infants, but the record fails to furnish any evidence of that. Not a particle

of proof is found in the record, that it would benefit the infants to disturb the will of the testator in the manner sought, or that they would be benefited by putting under their control a large body of lands, much of it unproductive, on which they would be required to pay the annual taxes, and without any guardian to advise and direct them in its proper management.

It does not, however, appear, that the infant defendants have joined in prosecuting this writ of error, although the writ appears to have been sued out in their names jointly, with that of Franklin L. Rhoads, the executor, but they do not assign errors. In the case of *Tibbs* v. *Allen, supra,* it was held, the writ of error being prosecuted by two of the adult defendants only, they could not assign as error such proceedings of the court below as affect the infant defendants only. The plaintiffs in error cannot be injured by any proceedings against the infants, however irregular they may have been. 27 Ill. 125.

These, however, are all of them unimportant questions in this case. The great question remains to be considered, as involved in the fourth error assigned, which is this: The court erred in entering a final decree, requiring a division of the money and lands of the testator for the reason, principally, that it was in direct opposition to the will of the testator.

On this assignment of errors, the merits of the whole case are brought before this court. New and important questions are raised by it, and doctrines maintained by the counsel for the defendants in error in regard to the construction of wills, requiring us to look attentively and searchingly into the books cited as authority on the several points made by the parties.

The counsel for the plaintiff in error insists, that this decree can be sustained only upon one of two grounds: First, that the will of the testator creating a trust to endure fifteen years after his death, is contrary to the policy of the law, and therefore voidable; or, second, that the provisions of the will in reference to the management of the estate, are merely directory, and may be altered or abrogated according to the discretion of the court.

The defendants in error contend, that the children of the testator are the only beneficiaries under the will, and that on

the death of the testator the interest in the property vested absolutely in them, with no limitation over, or conditional interest in any other persons, and that the interest of no one of the children is contingent. They insist, that all that part of the will making the trust and providing for sales, accumulations, etc., was intended to secure to the children the entire fund, with its accumulations, the sole object being, that his children should have all his property; and that all else in the will is directory merely — that a mode is provided by which his object shall be attained. Thus, it will be seen, the parties before us, are directly opposed, and it is for this court to decide between them.

The first question presented, involves the power of the testator to make the will in question, with the provisions in it in regard to accumlations, and their investment and re-investment. To determine this, reference must be had to our statute conferring the power to devise estates by will. Here, it will be seen, the power is conferred in plain language : " Every person aged twenty-one years, if a male, or eighteen years, if a female, or *upward*, and not married, being of sound mind and memory, shall have power to devise all the estate, right, title and interest in possession, reversion or remainder, which he or she hath, or at the time of his or her death shall have, of, in and to any lands, tenements, hereditaments, annuities or rents charged upon or issuing out of them, or goods and chattels and personal estate of every description whatsoever, by will or testament."

It will be perceived, this power is unlimited as to person or object, and we have held, if the testator be of sound mind and memory, he may pass by his own children on making a testamentary disposition of his estate. *Heuser et al.* v. *Harris, Ex., et al.*, 42 Ill. 425.

This being so, we are at a loss to perceive, if a testator can select the objects of his bounty, why he cannot also prescribe the time and mode in which that bounty shall be enjoyed, provided always, in so doing, he contravenes no well recognized and admitted principle of public policy, or stubborn rule of

right. From the earliest times, courts of justice have set themselves against such a disposition of property by will as would have the effect to tie up the land and capital of the country, obstructing thereby the free and active circulation of property, checking the improvement of the land and rendering its acquisition difficult; and, in short, to every disposition of it savoring of a perpetuity, which the law abhors. Yet, notwithstanding this, it has never been denied, so far as we are advised, that an executory limitation to a life or any number of lives in being, and twenty-one years afterward, is valid. Can it be doubted, that a testator, with a family of children, some of them grown, married and settled in life, and others of them infants, may devise his estate to executors with power to sell and convert it into money to be put at interest, and so remain until the youngest child, then not one day old, shall arrive at full age, and then the fund to be divided equally among all the children? In such case, which is but an ordinary limitation in strict settlement, no court would hold, that it was void for remoteness; yet, the time of enjoyment, by the beneficiaries, is more remote than that fixed by this will.

Defendant's counsel start with the proposition, that, "where moneys are directed to accumulate until the beneficiaries arrive at an age beyond adult age, they may have the fund on arrival at adult age, and that this is settled beyond controversy." The authorities to which he refers, are, Williams on Executors, 119 · Lewis on Perpetuities, 528 to 531, and note *p*; *Saunders* v. *Vantier*, 4 Beavan, 115, and S. C. in 1 Craig & Philips, 240; note 4, p. 248; *Jossellyn* v. *Jossellyn*, 9 Simon, 63; *Leeming* v. *Sheratt*, 2 Hare, 21, and note 1; *Roche* v. *Roche*, 9 Beavan, 66, and *Curtis* v. *Lakin*, 5 id. 155.

The reference to Williams cannot be accurate, as at the page indicated (119), in the brief and argument of defendants' counsel, the author is treating of the release of debts by legacies; and therewith, of the effect of appointing a debtor or a creditor to be executor.

We have looked into all the reported cases cited above which we have at command, and do not find any one of them support-

ing the broad doctrine insisted upon by defendants' counsel.
And we have also referred to Lewis on Perpetuities, and note
*p.*, in which the doctrine of *Saunders* v. *Vantier*, 1 Craig and
Philips, 240, S. C., 4 Beavan, 115, and of *Jossellyn* v. *Jossellyn*,
9 Simon 63, is discussed.

The author of note *p* refers to the remarks of a recent writer
(Hargrave) on the "Thellason act" (39 and 40 George III, ch.
98), directed against perpetuities. This writer maintains, that
in the cases of *Jossellyn* v. *Jossellyn*, and *Saunders* v. *Vantier*,
"all consideration of this act was excluded, the court proceeding
to the construction of the testator's will precisely as if that act
had not passed, and having in each case held, that the infant
took an immediate vested interest in the legacy, ordered the
fund, with its accumulations, to be transferred to the infant on
his attaining twenty-one years of age; although the testator
had directed the accumulation to continue in the former case,
until the donor had attained to twenty-four, and in the latter,
until he had attained twenty-five years of age; and although
in both cases, the accumulation, as directed by the testator,
would not have exceeded the statutory limits."

The author of the note insists, that the true ground of the
decisions in these cases is, that the legacies being vested at
once, and there being merely a postponed enjoyment, without
any gift over, in the event of the legatees not attaining such
full enjoyment, the consequences of the right of property
inevitably attached; one of which was, the power to assume an
absolute control over, and therefore to demand a transfer of the
fund immediately on attaining majority; it being open to the
legatee, either to allow the accumulations to proceed until his
attainment of the age specified in the will, or (as the attain-
ment of a particular age was not of the essence of the gift) to
anticipate the accumulations by taking the fund into his own
hands, immediately the law gave him the power of affecting or
disposing of his property. And he says, that this is the proper
interpretation of the decisions in question, on one of the cases
again coming before the court (4 Beavan, 115), is conclusively
established by the observation of Lord LANGDALE, to the effect,

that where a legacy is directed to accumulate for a certain period, or where the payment is postponed, the legatee, if he has an absolute indefeasible interest in the legacy, is not bound to wait until the expiration of that period, but may require payment the moment he is competent to give a valid discharge."

We are at a loss to perceive the analogy between these cases —(and the others cited by defendants' counsel are of the same character)—and the one now before us. In this case, we are not dealing with legacies, or with remainders or residuums of an estate, but are called upon to uphold or overthrow the scheme adopted by the testator, for the disposal of his whole estate. No legacy is left to any one, unless the devise of $10,000 to his widow shall be considered a legacy, nor is any residuum or remainder spoken of, or treated of by the testator. He was disposing of his whole estate, and devised it to his executors in trust for all his children, one-half of whom at the time of the testator's death were of full age, the proceeds to be invested and re-invested in United States interest-bearing bonds, and when fifteen years shall have elapsed after the death of the testator, the whole fund should be equally divided among his children.

This case does not seem to have one single feature in common with the cases cited, or of any one of them, and we do not think there can be found a well considered case in any court to which we have been accustomed to look, as authority, where there is no restriction by statute on the testamentary power, in which a trust created as this is, has been held invalid. We do not think a case can be found, where a court, in the absence of such restraint, has, at the request of the beneficiaries under a will, subverted the entire will, and made that a present estate and to be enjoyed presently, which the testator emphatically declared should only be enjoyed at some future time. Admitting the power to devise as being unrestricted, this testator had the unquestioned right to give his estate to his children or to strangers, and to either he had the right to say at what period of time they shall come into the enjoyment and control of it. If they demand the estate under the will, it must go to them in the mode prescribed by the will.

It is not for the defendants in error, nor is it for the court to say, the will is unwise, and, therefore, we will make another one. It is sufficient to know this is the will of the testator, which he had the power to make, and, as we said at the outset, unless its provisions are subversive of some acknowledged principle of public policy, or of a clear right, it must stand. There is no room for construction of the will; its provisions are very plain and simple, evincing a high regard by the testator for his children, whose fortune it was his earnest desire to enhance, and the strongest confidence in the stability of a government in whose securities it was equally his great desire his large estate should be invested. Whether this was wise or not, it is not for us to say. The bill seeks to subvert the whole scheme of the testator, on the ground merely, that one of the sons has no trade or profession by which to live, and no means, and one of the daughters is a widow with a family of small children, and without means, except such as may come to them through this estate. We see nothing in the case, that would justify this court in breaking in upon the disposal of this estate, in the mode provided by the will, however much we may sympathize with the children, whose enjoyment of the estate is so long deferred. We have, however, no doubt of the power of a court of chancery, on a proper case being made out, to order the trustee to anticipate the time of payment, under the will, so far as it may be shown to be necessary for the maintenance of the devisees, but its power should extend no further. And it appears from the record, that this has been done in several instances, and can be done from time to time, as proper cases are presented to the court. This does not subvert the will, or tend to defeat the intention of the testator, for his children were the darling objects of his solicitude, and were he living, he would undoubtedly make ample provision for them. A court of chancery may do, what it is evident from the will, the testator would do if living.

We have left out of view all consideration of other topics stated by counsel, as unnecessary to be decided. We place the case on the ground, that the will must stand, as being within

the competency of the testator to make, and the devisees under-it, if they desire the estate, must take it in the mode and at the time prescribed by the will.

These views dispose also of the question of partition, and of the power of the court to elect for the infants.

The decree must be reversed and the bill dismissed.

*Decree reversed.*