FIDELITY UNION TRUST COMPANY, SUBSTITUTED ADMINISTRATOR C. T. A. OF THE LAST WILL AND TESTAMENT OF EDWIN H. COLPITTS, APPELLANT, v. WALTER T. MARGETTS, STATE TREASURER, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF EDWIN H. COLPITTS, DECEASED.

Argued June 4, 1951—Decided June 29, 1951.

558

*Mr. Edward J. Brown* argued the cause for appellant (*Messrs. Riker, Emery & Danzig*, attorneys).

*Mr. William A. Moore*, Deputy Attorney-General, argued the cause for respondent (*Mr. Theodore D. Parsons*, Attorney-General, attorney).

The opinion of the court was delivered by

CASE, J.   The appeal was originally taken by the executor of the last will and testament of Edwin H. Colpitts, deceased, and is from the assessment of the transfer inheritance tax laid against the estate by the State Treasurer, acting as Director, Division of Taxation, Department of the Treasury of the State of New Jersey.   The executor has been replaced by Fidelity Union Trust Company (named in the will as alternate executor and as trustee), substituted administrator *c. t. a.*   The appeal was to the Appellate Division of the Superior Court and is brought before us on our own motion.

Appellant presents as its major heading that the decedent's widow, Grace P. Colpitts, was the sole beneficiary of the

residuary trust estate under paragraphs Seventh and Eighth of the will. We have no disagreement with that proposition, but the argument made thereunder and in support thereof presents a quite different question, namely, that the beneficiary takes absolutely. Mrs. Colpitts is the sole beneficiary under the seventh and eighth paragraphs, but she does not, as we shall find, take absolutely. Appellant's brief asserts that "Fidelity Union Trust Company has declared in writing under oath its acceptance of the trusteeship pursuant to paragraph Eighteenth of the will and has been duly appointed such trustee by the Essex County Surrogate's Court. Since it is the duty of the trustee to preserve the trust, any effort to terminate the trust will be resisted by Fidelity Union Trust Company, as trustee as aforesaid." Notwithstanding that protestation the cases cited by appellant and the principle of law upon which it relies lead, if accepted, to the result that the entire residuary estate of the testator vested at once in the widow and thus in effect terminates, if she so demands, the testamentary trust; this notwithstanding the provision of the will that the residuary estate be set up as a trust, the income to be paid quarter-yearly to the decedent's widow during her life, with gift over to the executor or administrator of the widow at her death. We are constrained to understand as the essence of the point that which is clearly and variously stated in the argument thereunder as for illustration: "The New Jersey cases find support in the English decisions where it has been uniformly held that a bequest to A for life, with remainder to his executors and administrators or to his personal representatives, is a gift of an absolute interest to A" and the quoted excerpt from 2 *Jarman on Wills* (*7th ed.*), *p.* 1156: "A bequest to A for life, with remainder to his executors and administrators or to his personal representatives, is a gift of an absolute interest." Therefore, if we accept appellant's argument, we accept that which is an incident to the principle of law for which it contends, namely, that Mrs. Colpitts, at her demand, becomes entitled absolutely to her husband's entire residuary

estate and that any continuance of the trust is at her toler-
ance; and we address our study to that conception. If
appellant were to include within the proposition—which it
does not and under the facts of the case cannot—that the
beneficiary is a party to the proceeding and desires or con-
sents to the termination of the trust, it would come within
the reach of some respectable authorities which it cites but
with which, on that point, we do not agree. The argument
thus presented under the first point is grounded, not in our
tax statutes, but in the general law of estates, and upon the
*quantum* and nature of the gift or gifts bequeathed by the
will. If the tax is to be laid upon the assumption that under
the law of estates the testator's residuary estate became
absolutely and forthwith the property of his widow, we must
hold not only for the assumption but for the law and facts
as assumed. And if we so hold, then any continuance of the
trust or of the trustee is because Mrs. Colpitts desires the
continuance and not because of any force imputed to the
will of her husband.

The will appears to have been drawn with care. It has
every indication of stating, in precise legal terms, exactly
what the testator desired to accomplish. It contemplated
that as between the testator and his wife the wife might die
first, or the testator might die first, or the two might die in
a common disaster under such circumstances that it would be
impossible to say which of them died first; and explicit
directions were based upon those several eventualities.

The trust was established and the remainder disposed of
by the seventh and eighth paragraphs of the will as follows:

"SEVENTH: If my wife, Grace P. Colpitts, shall survive me, I
give devise and bequeath all the rest, residue and remainder of my
estate of whatsoever nature and kind and wheresoever situate to my
Trustee hereinafter named, In Trust Nevertheless, to invest and re-
invest the same from time to time and to receive the income there-
from and to pay such income in quarterly installments to my wife,
Grace P. Colpitts, during her life, and I direct that the income from
my residuary estate, received during the *interim* period of adminis-
tration of my estate and before the said trust account shall be es-

tablished under this my last will and testament, shall be payable to my wife, Grace P. Colpitts.

EIGHTH: If my wife, Grace P. Colpitts, shall survive me, I direct that at her death all the rest, residue and remainder of my estate in whatever form the same shall then be held, shall be paid over in kind by my executor or my trustee, to her executor or administrator, free of the trust provided for in paragraph numbered 'SEVENTH' of this my last will and testament and the same shall constitute a part of the estate of my wife, Grace P. Colpitts, at the time of her decease; and I so give, devise and bequeath the same absolutely."

The will authorized the trustee, in its discretion, to sell any or all property. It gave the trustee "all of the general powers" of a trustee and further provided:

"THIRTEENTH: I hereby authorize and empower * * * my Trustee hereunder, in * * * its discretion:

(1) To retain and hold any bonds or stocks or other investments or securities held by me at my death, even though the same be of a speculative or semi-speculative character or unsuitable for trust investment.

(2) To change the investment of funds in my estate from time to time in his or its discretion and without reference to the limitations otherwise provided by law for investments by trustees, and without being under any duty to diversify investments.

(3) To invest in any stocks, bonds, or other securities he or it may select.

(4) To register corporate stock or other securities held hereunder, in his or its own name or in the name of its nominee, or to hold the same in bearer form.

(5) To assent to or participate in any reorganization, merger or other corporate proceedings of any corporation in which I shall at the time of my death hold shares of stock, bonds or other securities or in shares of stocks, bonds or other securities which shall be acquired by my Executor or Trustee hereunder, and to exercise any right of subscription or any other rights which may be conferred upon or which may attach to such stock or other securities, and to make the necessary payments therefor from the principal of the funds in his or its hands, or to sell such rights in his or its discretion.

(6) To exercise personally or by limited or general proxy the voting rights attaching to any shares of stock, bonds or other securities in my estate.

(7) To sell, transfer, convey, any or all of my property, real as well as personal, in his or its hands.

(8) To borrow money and to give security therefor out of my estate for the purpose of raising funds to pay taxes with respect to my estate or any part thereof."

A significant recital of the wife's knowledge of and contentment with the provisions of the will is given in the seventeenth paragraph as follows:

"SEVENTEENTH: I have acquainted my wife, Grace P. Colpitts, with the terms of this my last will and testament, and she is entirely satisfied with the provisions which I have made for her herein and the provision which I have made for her out of the proceeds of the insurance upon my life, and said provisions are in lieu of any right of dower or any other right which she would otherwise have in my estate or any part thereof."

There are three factors in the case which serve to distinguish it from most of the citations and arguments presented by appellant: (1) The widow, who it is said becomes entitled, is not a party to this litigation. (2) The widow has not signified that she consents to or desires a termination of the trust. (3) There are no persons, other than the widow and her executor and administrator, who are named with respect either to the income or the remainder over. Therefore, no interest, other than that of the widow, was being protected by the testator.

If the true construction of the will gives an absolute estate to Mrs. Colpitts, that result is reached against the testator's clearly expressed intent. Had Mr. Colpitts intended to make a gift absolutely to his wife, it is unbelievable that he would choose the bizarre and clumsy method of setting up a life estate followed by a bequest of the remainder to the end that the application of an arbitrary rule of construction would break down that falsework into a result which he could so easily and simply have accomplished by a direct gift.

Appellant suggests that a reason for the testator's form of gift is that the United States Treasury Department Regulations (Reg. 105, § 81.47a (b) (2)) provide that a property interest bequeathed in trust by a decedent shall be considered as having passed from him to his surviving spouse if the trust income is payable to her for life and upon her death the *corpus* is distributable to her executors or administrators; and, so the argument runs, the testator thus purposed to

obtain an allowance of a marital deduction of 50 per cent in determining the value of his net estate for the purpose of computing the federal tax thereon; which is to say that when a husband makes a testamentary gift to his surviving spouse, there is, in calculating the federal inheritance tax, a permissible deduction of the aggregate amount thereof up to 50 per cent of the value of the adjusted gross estate. The force of the reasoning is not apparent because it is premised upon an argument the effect of which is that by the conjunction of life estate and gift over the title became absolute in Mrs. Colpitts. If it was the testator's purpose to accomplish the latter result, why did he resort to the fiction of a trust? We do not undertake to construe the federal statute or the departmental regulations; we merely observe that the federal taxation is no reason why a testator should follow such a circuitous route instead of making a direct and absolute gift.

The trust is not a device for preserving the estate during the life tenancy for the benefit of remaindermen; on the contrary it is the method by which the testator endeavored to benefit his wife by the not unusual method of placing the burden and responsibility of management in capable hands to the end that she be shielded from unwise importunities and ill-advised investments, that she should have such regularity and continuity of income as men trained to that work could procure, that the income should be at her unrestrained disposal but that she be relieved from the stress and worriment of making and renewing investments, that the *corpus* be protected from impairment during her life, and that, at death, she should have the right to determine the final disposition or to permit the remainder to follow the course of her own intestacy; the life estate not being an incident to other accomplishments but the sole objective of the trust. Further, the trust is not a spendthrift trust. It is not established upon a presumed improvidence on the part of the beneficiary. There is no placing of the income beyond the reach of creditors, none of the stigma that sometimes attaches

to a spendthrift trust. (*Cf. L'Hommedieu v. L'Hommedieu,* 98 *N. J. Eq.* 554, 558 (*Ch.* 1925)).

May a husband not lawfully do that? And if not, why not? Some of the cases, which, on superficial inspection, seem of a contrary view, prove, on study, not to be so; such as *Tilton v. Davidson,* 56 *A.* 215 (*Sup. Jud. Ct. Me.* 1903), where the testator gave his estate in trust to his two daughters, to pay themselves the income therefrom, a situation so obviously different as to call for no elucidation. We perceive no sound ground for denying to a testator, who makes his purpose clear in his will, the right to do what Mr. Colpitts did, unless arbitrary rules of law contrary to such a practice have become so thoroughly established as to stay the court's hand, a condition which, for reasons that we shall state, we think does not exist in this jurisdiction.

It is not to be denied that there is a school of judicial thought, particularly in England, which supports the terminability of the life estate at the behest of the beneficiary under circumstances similar to the present, but the weight of the American decisions is to the effect that where the trustee has active duties the trust is not terminable as a matter of right at the demand of the beneficiary even though the latter is given the income for life and the power of disposition at death. A difference arises in the cases on the distinction between active and passive duties. *Cf. Dodson v. Ball,* 60 *Pa.* 492 (*Sup. Ct.* 1869). There is an approach to unity on the proposition that if any lawful object of the trust remains unsatisfied or if "some good reason appears to the contrary" the court is not justified in abrogating the trust, *cf. Forbes v. Snow,* 140 *N. E.* 418 (*Sup. Jud. Ct. Mass.* 1923), *Claflin v. Claflin,* 20 *N. E.* 454 (*Sup. Jud. Ct. Mass.* 1889), *In re Spring's Estate,* 66 *A.* 110 (*Sup. Ct. Pa.* 1907); and that the intent of the testator is diligently to be sought, *Weatherhead v. Stoddard,* 58 *Vt.* 623 (*Sup. Ct.* 1886). Differences again arise upon the precision with which the instrument of trust must state the objects and, particularly by those courts which follow the English decisions, upon whether the intent

of the testator, although ascertained, shall be rendered ineffective by the application of an arbitrary formula, *viz.*, income for life plus power of appointment or gift over to estate of the life beneficiary results in an immediate vesting of the entire donative estate. The Pennsylvania view is that if the party in whose favor the trust was created is *sui juris,* and there is no limitation over of income or principal, and no ultimate purpose of any kind requiring its continuance expressed, except such as is implied from the direction to pay over income, a termination may be decreed, but that the whole will must be examined to discover the purpose of the testator. *In re Buch's Estate,* 122 *A.* 239 (*Pa. Sup. Ct.* 1923). "The primary rule is to give effect to the intention of the testatrix and the presumption is that the intent was lawful." *In re Holbrook's Estate,* 62 *A.* 368 (*Pa. Sup. Ct.* 1905). *Cf. Shelton v. King,* 229 *U. S.* 90, 57 *L. Ed.* 1086 (1913) ; particularly *De Ladson v. Crawford,* 93 *Conn.* 402, 106 *A.* 326 (1919), which gives a satisfying analysis adverse to the English rule; *Rhoads v. Rhoads,* 43 *Ill.* 239 (*Sup. Ct. Ill.* 1867) ; *Girard Trust Co. v. Schmitz,* 129 *N. J. Eq.* 444, 454 (*Ch.* 1941) ; *Trust Co. of N. J. v. Gardner,* 133 *N. J. Eq.* 436, 440 (*Ch.* 1943) ; *Moore v. Moore,* 137 *N. J. Eq.* 314, 321 (*Ch.* 1945).

"Modern decisions indicate a growing appreciation of the judicial duty to uphold testamentary dispositions of property, made through the medium of trusts, instead of searching for reasons for avoiding them, or dealing with them with any degree of disfavor." *Holmes v. Walter,* 62 *L. R. A.* 986 (*Wis. Sup. Ct.* 1903). "When it is plain, from the language of the gift, that a testator's dominant purpose is to confer a fee simple absolute, he cannot by subsequent words limit the natural attributes of that estate (citing) ; but, where the language employed, taken as a whole, negatives the idea of such an intention, the right, under our decisions, to create trusts, for the purpose of controlling the possession and management of the property involved, is most broad."

*Schuldt v. Reading Trust Co.*, 113 A. 545 (*Sup. Ct. Pa.* 1921).

The general rule has been well stated by Professor Scott as follows:

"Although the time designated by the terms of the trust for its termination has not arrived, the beneficiaries, if they all consent and are *sui juris*, can compel its termination if its continuance is not necessary to carry out a material purpose for which it was created. Where, however, its continuance is necessary to carry out a material purpose of the trust, it is held in most jurisdictions in the United States that the beneficiaries cannot compel the termination of the trust. In England, on the other hand, it is immaterial whether the purposes of the trust have been carried out or not; the beneficiaries, if they all agree and are all *sui juris*, can at any time insist upon its termination.

The American courts have laid emphasis on the idea that the wishes of the settlor should be controlling except where it would be opposed to some definite policy to give effect to his desires. In England, on the other hand, the courts have felt that although the extent of the interests of the beneficiaries depends upon the intention of the settlor, the control of their interests should be in their own hands, except where the interests of others limit such control. In the United States the courts take the view that the settlor can dispose of his property as he likes. In England the beneficiary of a trust can dispose of his interest as he likes."

3 *Scott on Trusts*, § 337.

In *Camden Safe Deposit and Trust Co. v. Guerin*, 89 N. J. Eq. 556 (*E. & A.* 1918), the testator attempted to set up a trust which gave the income for life to various persons with a remainder over which failed because it violated the rule against perpetuities. Since the gift over failed, the remainder went, as in an intestacy, to those who, as it happened, were also the life beneficiaries. No reason was advanced for the establishment of the life trust other than to maintain the fund for the benefit of those persons to whom, under the law, it could not go, and, therefore, the reason for postponing payment to the owners failed. The court considered that the trust thereupon became passive and, upon that view, held that the property should go to the owners freed of the trust. *Cf. Dare v. N. B. Trust Co.*, 122 N. J. Eq. 349 (*Ch.* 1937).

*Newlin v. Girard Trust Co.*, 116 *N. J. Eq.* 498 (*Ch.* 1934), dealt with a will wherein the testatrix bequeathed·her residuary estate to a trustee with directions to pay the income to her husband for life, and upon his death to her children, prorated, with remainder ·over of each child's share of the principal, upon the child's death, to his executor or administrator. The husband died, and at his death there survived four children who claimed the beneficial ownership and asked that the trust be declared at an end and the fund be paid over to them. The court held that "They (*viz.*, the children) were the object of their mother's solicitude; their issue were not within her contemplation." The vice chancellor observed that "There is no New Jersey guiding authority; we must go to England," and, taking the law of the latter jurisdiction, which, as we have seen, is not at one in all respects with the weight of American authority, determined that there was no valid legal objection to accelerating the period of distribution, that the period was postponed for the single purpose of letting in the life interest of the four children, that the gift of the life interest was absolute, that there was no contingency to the vesting of the remainder, that there was no gift over, and that the children could bring the trust to a close. The decision was not appealed.

*Ampere Bank and Trust Co. v. Esterly*, 139 *N. J. Eq.* 33 (*Ch.* 1946), followed the lead of *Newlin v. Girard Trust Co.*, and it, too, did not go up.

We have no occasion to express a view upon whether or not, on the facts of the two mentioned Chancery cases, there remained active duties for the trustee to perform within the scope of the testamentary direction. If there did remain such, and they were not contrary to any legal principle, they should have been carefully considered. The question whether a termination of the trust would frustrate the intent and object of the testator appears not to have been considered in the *Newlin* decision, but it was raised in the *Ampere Bank and Trust Company* case and upon it the court seems to have been of the mind that where the beneficiary is the sole party

in interest and the trust is not a spendthrift trust, the beneficiary, if of full age, may have it terminated, irrespective of the creator's intention. We do not agree with the comprehensive finality of that disregard of a testator's intention; and this is said without impinging upon the jurisdiction of a Chancery court, exercised in a number of instances, as, *e. g.*, *Huber v. Donoghue*, 49 *N. J. Eq.* 125 (*Ch.* 1891), under the peculiar facts of a given case, all beneficiaries consenting, to give relief or even to terminate a trust.

3 *Jarman on Wills* (*7th ed.*) 1590 is cited in the *Ampere Bank* opinion. It is also cited, as noted above, in appellant's brief in support of the contention that the gift over to the executor or trustee of the beneficiary wife is a gift of an absolute interest to the wife. We note, however, the words of authority with which the author states the law applicable to instances different from our own as distinguished from the qualified and restrained expression that "The same construction, too, in some instances, has been applied in cases of a more doubtful complexion; as where the bequest was to A for life, and, after his decease, to his executors or administrators or personal representatives." Thus a legal principle, stated with emphasis in respect to other situations, becomes, when applied to a hypothesis pertinent to our issue, *of more doubtful complexion, applied in some instances*; which is rather frail support for appellant's contention.

Our former Court of Errors and Appeals in *Schmieder v. Meyer*, 97 *N. J. Eq.* 335 (1924), reversed a Chancery decree accelerating, on request of life tenants and remaindermen, the date of distribution under a trust for the sufficient reason that no provision was made for a possible divestiture; but the opinion, going beyond that narrow ground for decision, indicates a legal philosophy not at all consistent with a ready disregard by the courts of testamentary direction:

"We do not agree, however, as decided by the vice-chancellor, that the parties interested might accelerate the date of distribution and bring to an end the trust by mutual agreement. It is true that a widow may refuse a life estate in the property of her husband under

his will, and that in such event, there being no life estate outstanding, the estate becomes immediately distributable and vests absolutely in the remaindermen. Such, however, was not the circumstance in this case, as the widow accepted the terms of the will. The widow assigned, or agreed to assign, her interest to the remaindermen, which, in our opinion, did not thereby terminate the life estate. The life estate still continued ·in existence, for under the provisions of the will the remaindermen take the estate after the widow's death or remarriage if they survive her."

No taint of illegality is laid against the trust. No fault is found except that because Mr. Colpitts made one gift to a trustee with income to his wife for life, and another gift of the remainder, on his wife's death, to her executor or administrator, he thereby did that which, by operation of law, became a gift of immediate absolute interest to her, although such an outcome would be clearly and flatly the contrary of Mr. Colpitts' intention and words. The suggested result would not merely be something he did not wish to do; it would be that which he specifically wished not to do and planned and endeavored to avoid. The objects and purposes of the trust have not been accomplished. That is of high importance in determining whether the trustee's duties were passive or active because it is rather widely accepted in our American cases that a function which must be performed by a trustee and no one else is an active duty under the trust, and that while there is an active duty, plainly within the testator's main objective, to be performed by the trustee, the estates may not be merged to the exclusion of the trust. A trustee designated to invest and reinvest the capital of a fund, to collect and disburse income, to exercise the discretion granted and the functions imposed in the Colpitts will, is engaged in no passive trust. He is performing an active service to both the living and the dead.

It is our opinion that the will discloses a clear purpose, which is lawful and has not yet been accomplished, and that it imposes active duties upon the trustee which have not been completed and which will not be completed while Mrs. Colpitts lives. Trustee functions which in one case are pas-

sive may in another case be active, depending upon the testator's purpose. Assuming that a simple trust is a simple conveyance of property to one in trust for another, without further directions, this trust is special and not simple. Assuming that an active trust is one wherein active duties are required of the trustee in the performance of the trust imposed in him, the present trust is active and not passive. *Cf. Ward v. Ward,* 11 *N. E.* 373 (*N. Y. Ct. of Appeals,* 1887). One of the conditions which must exist before a trust will be accelerated, even upon the application of all parties in interest, is that every reasonable ultimate purpose of the trust's creation and existence has been accomplished and that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result. *Ackerman v. Union & New Haven Trust Co.,* 96 *A.* 149 (*Sup. Ct. Errors Conn.* 1915). Regarding a dry trust as one drained of usefulness according to the economy of the times, this trust is certainly not of that class. "An active trust may be created as a protection to the beneficiary because of his inexperience, improvidence, inability to manage his estate, or for any other purpose, not illegal, which the benefactor may deem wise or expedient in order to carry out his intentions," *In re Spring's Estate, supra;* and, having a definite fixed time for a definite fixed object, such a trust cannot be accelerated by a family settlement; the expressed wishes of the testator must be followed, *In re Stewart's Estate,* 98 *A.* 569 (*Pa. Sup. Ct.* 1916).

It is not practicable to review all of the varying incidents upon which trusts have been held either passive or active, or upon which equitable principles have called for a retention of the trust or for its termination notwithstanding the time fixed by the trust instrument for its ending has not arrived. But, to afford opportunity for comment expressive of our views, we shall refer to two cases, one arising on a trust agreement *inter vivos* where a termination was decreed and the other on a testamentary trust where termination was denied.

*Culbertson's Appeal*, 76 *Pa.* 145 (*Pa. Sup. Ct.* 1874), has been of some importance in the jurisprudence of the State of Pennsylvania. Culbertson died intestate. Real estate was sold for the payment of debts and after the debts were paid one-third of the remaining proceeds was left in the hands of the administrator. The widow was entitled to the interest on that residue during her life. An *inter vivos* agreement was entered into between the widow, the guardian of the minor children and the administrator by which the money should remain in the hands of the administrator, the widow to receive the interest upon it, and at her death the principal to go to Culbertson's heirs. That arrangement was kept for nearly 20 years. In the meantime all of the children had become of age and they, being *sui juris,* united with their mother, the widow, in requesting the administrator to pay over to her the whole fund, offering fully to release and discharge the administrator and his sureties. The administrator refused. The Pennsylvania Supreme Court held that in the absence of any substantial reason to the contrary the request could not be denied. And that decision was manifestly just. The purpose of the trust, namely, the preservation of the fund until the children should become *sui juris* and competent either to require the trust to be maintained or to agree with the widow, upon terms mutually acceptable, to its disposal, had been fulfilled. The same outcome would probably have attended a trust, income for life to A, remainder over at A's death to B, the trust being set up to save the fund ultimately to B; and A and B thereafter, both being *sui juris,* agreeing upon its termination. Likewise, a trust established in a married woman's favor to protect her and her estate from marital pressure loses point and purpose with the husband's death or divorce. *Cf. Dodson v. Ball, supra.* But we perceive a substantial distinction between the termination of trusts when the motive has vanished and the termination of an incompleted trust by which the donor separates the legal and the equitable title to save his widow from the burden and distress of unfamiliar functions in a

confused and changing business world. The controlling factor, as we understand it, is, as was said in the *Culbertson* decision, whether the thing sought to be secured by the trust does or does not demand the continuance of it.

*Re.Will of Nathan Hamburger, Jr.,* 185 *Wis.* 270, 201 *N. W.* 267, 37 *A. L. R.* 1413 (*Wis. Sup. Ct.* 1924), has points of close resemblance to the case before us. The will left the residuary estate to the testator's executors, in trust, "upon the trust that they hold and invest the same and pay the net income thereof to my beloved wife, Bertha Hamburger, for her own sole use and benefit so long as she may live, and subject only to this bequest in trust for and during the life of my said wife, the principal of this bequest is given, devised and bequeathed to my wife to become her sole and separate estate to be disposed of by her, by will or otherwise; and if she do not so dispose of it, to become upon her death part of her intestate estate." The issues involved a construction of the will on the plaintiff's contention that by the terms of the will the life interest and the remainder were merged in the widow, and that the trust was therefore terminable by her. The opinion learnedly reviews the decisions on the question. It takes the position that the manifest intention of the testator was to create a trust, giving the control and management of the residue to trustees during the life of the widow; that although she was given a legal estate in the remainder, the estate was subject to the trust; that the intent of the testator could not be disregarded and that it seemed clear that his paramount object was to make certain that during her life his widow should have every comfort suitable to her rank in life; that he made elaborate provision for the care and preservation of his estate during the life of his widow so that the fund might not be lost at the hands of persons inexperienced in business affairs; that it was the testator's intention, as expressed in the will, to create a trust to continue during the life of his widow whether the beneficiaries desired such continuance or not; that the legal and equitable estates did not merge and that the will did not

authorize the termination of the trust because the purpose contemplated by it had not been fulfilled or completed; and that, construing the will as a whole, it contained an implied prohibition against the termination of the trust until the object had been accomplished.

It was Mr. Colpitts' paramount object that the trust should continue during the life of his widow whether she ultimately wanted it that way or not. Considering the will as a whole there was an implied prohibition against the termination of the trust until that object has been accomplished. We find no legal barrier against the protection of that prohibition. There was no merger of the equitable and the legal estates.

For those reasons, and for the further reason that the beneficiary is not a party to the action and has not signified her desire, *Sears v. Choate,* 15 *N. E.* 786 (*Sup. Jud. Ct. Mass.* 1888); *Ackerman v. Union & New Haven Trust Co., supra,* we may not order a tax procedure upon a theory which would lead to a termination of the life trust should the beneficiary come in and demand it.

However, the fact that our view of the character and *quantum* of estate, and the incidents flowing therefrom, which Mrs. Colpitts takes under her husband's will, differs from the contention we have found implicit in appellant's argument does not mean that the effort by appellant to have a reassessment of the transfer tax is not well grounded. Mrs. Colpitts was, as appellant contends, the sole beneficiary of the residuary trust estate under paragraphs Seventh and Eighth of her husband's will. That residuary estate does not vest absolutely in her because there is impressed upon it a trust over which she has no control and which she may not terminate. But that does not, in our opinion, present a reason why the gift over should be taxed as though it went to another entity. The gift over to the executor or administrator was not to benefit them, either personally or in virtue of their several offices, nor did it call, essentially, for distinctive action by either of them. It simply put the assets of the fund in the channel through which the wife's other and unrestricted

property would run. We discover no statutory purpose which would be served by treating the gift over as passing to any other legatee than Mrs. Colpitts. When the time comes, and the gift shall have been paid to the executor or administrator, and is about to be transferred from one or the other to the legatees or next of kin of Mrs. Colpitts, it will doubtless be taxed, under such tax laws as shall then exist, as a transfer from her estate. The property will not pass to the taker beyond Mrs. Colpitts as a gift over from Mr. Colpitts by virtue of a power of appointment; therefore *R. S.* 54:36–4 does not apply. Now, the transfer is to Mrs. Colpitts' estate. It should be taxed as such, and not as a gift to some one else. The practical outworking is that the gift over presently stands assessed as a transfer to the executor or administrator at $5,265.17 and the tax has been paid in that amount, whereas if assessed at the favored rate allowed a widow the figure would be $1,353.03, a difference of $3,912.14. There is no contingency or defeasibility in the gift over within the meaning of *R. S.* 54:36–3. Mrs. Colpitts must die, some time; and when she dies she will die either testate or intestate as to this gift; if testate, the gift goes to her executor; if intestate, to her administrator. It matters nothing that it is not known which of those persons will function, or that his identity is not known. The inevitable fact is that the gift will be a part of Mrs. Colpitts' estate. We consider that *R. S.* 54:36–1, concerning the taxing of vested remainders after an estate for life, was not intended to apply to an instance where the person served by the life estate and the person served by the gift over is the same individual, circumstanced by the incidents of this case.

The assessment was erroneous. There should be a reassessment (made now, not deferred) as indicated above and a refund of $3,912.14, with interest, to the estate.

VANDERBILT, C. J. (concurring). I agree with the majority that Mrs. Colpitts is the sole beneficiary of the estate and that under our transfer inheritance tax statutes the estate

is presently taxable in its entirety at the rates applicable to her. This is so, however, whether she takes an absolute present estate in derogation of the trust, as the appellant argues, or whether she takes a life estate and a remainder subject to the trust, as the majority concludes. It is not necessary on this appeal to determine the precise nature of her interest in the estate or to pass on her power to terminate the trust. Moreover, since she is not a party to this action, it would seem to be inappropriate to determine the issue now.

VANDERBILT, C. J., and HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For affirmance*—None.