164 N.J. Super. 33 (1978)
395 A.2d 552
HERITAGE BANK-NORTH, N.A., PLAINTIFF-APPELLANT,
v.
HUNTERDON MEDICAL CENTER, FIRST PRESBYTERIAN CHURCH OF MENDHAM, FLEMINGTON PRESBYTERIAN CHURCH AND CAROLYN ELIZABETH CLARK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1978.
Decided November 29, 1978.
*35 Before Judges CONFORD, PRESSLER and KING.
Mr. Clifford W. Starrett argued the cause for appellant (Messrs. Schenck, Price, Smith & King, attorneys).
Mr. Lyndell M. Carlin, Jr. argued the cause for respondent First Presbyterian Church of Mendham (Messrs. Belson and Carlin, attorneys).
Mr. Robert F. Danziger argued the cause for respondent Flemington Presbyterian Church (Messrs. Large, Scammell & Danziger, attorneys).
Mr. Waldo H. Carkhuff argued the cause for respondent Carolyn Elizabeth Clark (Messrs. San Filippo, Matthews & Carkhuff, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
Plaintiff Heritage Bank-North, N.A. (bank) is both the trustee under a trust agreement executed by testatrix Olive B. Babbitt and the executor of her pour-over will executed in conjunction with the trust. It appeals from that portion of a judgment entered by the Chancery Division approving a compromise among the three remaindermen[1] of the testamentary trust, defendant charities, and the life tenant thereof, defendant Carolyn Elizabeth *36 Clark who is testatrix' daughter and only child. The import of the compromise was the termination of the trust and the distribution of its assets among the life tenant and remaindermen in agreed ratios. Plaintiff's resistance to the compromise is predicated on the spendthrift provision included in the trust instrument in respect of defendant Clark. It is plaintiff's contention that because of that provision, the trust is not subject to the consensual termination since such termination would necessarily frustrate and defeat the testamentary plan. It argues further that the trial judge's error was his finding, unsupported by the evidence, that inclusion of the spendthrift provision was contrary to testatrix' probable intent. We agree with that contention and reverse.
There is no question that the trust did in fact contain a spendthrift provision prohibiting the life tenant from transferring or assigning her interest therein. We fully concur with the trial judge's legal conclusion that if this provision was in fact expressive of testatrix' testamentary plan for her daughter, the trust would not be subject to termination or acceleration. That conclusion accords with the well settled principle that termination by consent of the beneficiaries cannot be compelled where continuation of the trust is essential to carry out a material purpose thereof. Obviously, since the material purpose of a spendthrift trust is to prevent anticipation or control of future income or corpus by the protected income beneficiary, acceleration of the trust would directly contravene testator's intent. It is also clear that even if not of an express spendthrift nature, a trust nevertheless created for the primary purpose of ensuring the beneficiary's support and maintenance is not terminable by consent since such termination would obviously also contravene testamentary intent. See Bd. of Directors, Ajax, etc. v. First Nat'l Bank of Princeton, 33 N.J. 456 (1960); Ampere Bank and Trust Co. v. Esterly, 139 N.J. Eq. 33 (Ch. Div. 1946); Fidelity Union Trust Co. v. Margetts, 7 N.J. 556, 563 (1951). And see 2 Restatement, Trusts 2d, § 337, Comment m at 158 (1959); 6 N.J. Practice *37 (Clapp, Wills and Administration) (3 ed. 1962), § 543 at 72.
Our point of departure with the trial judge's analysis is his finding that the inclusion of the spendthrift provision by the scrivener was contrary to testatrix's probable intent. We are sensitive to the deference to which the trial court's findings are entitled. But that deference is predicated upon adequate evidentiary support for those findings. Rova Farms Resort Inc. v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). Our review of the record constrains us to conclude that the evidence did not warrant the determination that the spendthrift provision was probably unintended.
Testatrix' attorney testified, without contradiction or contraversion, that he drafted the spendthrift clause because of his client's statements to him that while she wanted her daughter provided for, she was nevertheless concerned that she might not be able to "capably manage the funds" or that she "might dissipate the estate." As he also expressed it, "Mrs. Babbitt indicated her fears that her daughter could not properly handle money and that her daughter was to be protected from herself and everyone else who might be able to get the principle of the money." We are satisfied that even though the scrivener could not recall either reading or explaining the clause to testatrix when she executed the instrument, its inclusion was neither gratuitous nor officious but was an appropriate response to her clearly articulated testamentary plan and intention. We do not view that plan as in any way contradicted by the power accorded the institutional trustee to invade corpus for the beneficiary's benefit or by the outright gift to the beneficiary, by way of a specific bequest, of some $25,000. Indeed, that gift, coupled with a life interest in a residuary estate then calculated as having a net value of approximately $100,000, suggests strongly to us that testatrix' financial plan for her daughter was to provide her with some immediate capital but to preserve the bulk of the family assets as an assured source for her lifetime support. The daughter was *38 40 years old at the time the trust was executed and had no children of her own. There were no other direct descendants and testatrix' collateral descendants were left modest specific bequests. The inference is inescapable that the trust scheme was not to provide an ultimate bequest for the remaindermen-charities but rather intended to protect and advantage the life beneficiary. We think it evident that the import of the spendthrift clause was intended and that the trust is therefore not terminable.
Defendant Clark argues, finally, that even if the spendthrift clause had been intended, it is terminable here because termination was a term of an overall compromise of an entire controversy and such a compromise is, pursuant to N.J.S.A. 3A:14-1,[2] entitled to judicial approval. The controversy alluded to was the right of the trustee to obtain reformation in respect of designation of the remaindermen. See footnote 1, supra. We agree, however, with the trial judge's finding that the proofs on the reformation question were so clear and convincing as to prevent any initial resistance to reformation from being characterized as creating a genuine controversy. As noted by the trial judge, "merely to state a denial does not in itself create a substantial controversy." Thus, we seriously doubt that the existence of the reformation issue was adequate to bring the attempted consensual termination within the operation of N.J.S.A. 3A:14-1. But in any event, even if it were, we are satisfied that the obligation of the courts to implement testamentary intent supersedes in these circumstances the general public policy favoring dispute settlement.
The judgment appealed from is affirmed insofar as it directs reformation. It is reversed insofar as it permits termination of the trust.
NOTES
[1] Because of a clerical error in the final typing of the instrument, no remaindermen were named therein and this action was originally commenced for the exclusive purpose of seeking reformation to correct that error. That relief was allowed by the trial judge, who found as a fact that the failure of the trust to designate any remaindermen at all and these intended three in particular was a reformable clerical error, the proofs being "clear and convincing as to the settlor's intent and there [being] * * * no controverting factor." No appeal is taken by any party from the provision of the judgment so reforming the trust, although defendant Clark's initial pleading resisted reformation.
[2] This provision is apparently unaffected by the 1977 probate law amendments.