IN THE MATTER OF THE ESTATE AND THE TESTAMENTARY TRUST CREATED UNDER ARTICLE FOURTH OF THE LAST WILL AND TESTAMENT OF JAMES ORVILLE RANSOM, DECEASED.

Superior Court of New Jersey
Law Division Probate Part
Atlantic County

Decided May 1, 1981.

*George S. Arslanian, Jr.,* for plaintiffs.

*James R. Picciano,* for defendants Estate of Frank Ransom and its executrix.

*John C. Babin,* for defendant Marion Gandolfi.

*Theodore S. Ridgway,* substituted trustee.

STEEDLE, J. S. C.

The present action is in the nature of a will contest.

Plaintiffs in this action are Karen Caruso, Wayne Ransom and James O. Ransom, III; they are the grandchildren of James Orville Ransom, deceased (hereinafter "testator"), and the children of James Orville Ransom, Jr., testator's son.

Based upon those allegations in the pleadings which were admitted, certain stipulations between and among the parties and certain testimony which was largely uncontroverted, the court has made certain findings which establish the basic factual context of the present litigation. James Orville Ransom, Sr. died testate on December 18, 1970, leaving a will dated June 21,

1966. On January 12, 1971 the Atlantic County Surrogate admitted the will to probate and issued letters testamentary to Frank Ransom, the executor name therein (hereinafter "executor"). Testator was survived by his wife Josephine Ransom [1] and three natural children, Frank Ransom, the executor; James Orville Ransom, Jr., and Marion (Ransom) Gandolfi.

Frank Ransom, the executor of the subject will, died testate on April 27, 1978; Rita F. Ransom, his widow and the executrix of his estate, has been named a defendant in the present action. James Orville Ransom, Jr. died testate on November 27, 1974, survived by Rita L. Ransom, his widow and executrix of his estate, and three children, plaintiffs herein. Defendant Marion Gandolfi is the sole surviving issue of the testator herein.

Under the terms of the subject will there are three significant elements to testator's scheme of disposition. First, in the second paragraph of the will he bequeathed outright certain personal property to his widow Josephine Ransom. Second, in the third paragraph of the will he bequeathed 51% of the issued and outstanding shares of Ransom Raised, Inc., a closely held corporation, to his widow Rita Ransom outright. That paragraph further provides that any additional shares of Ransom Raised, Inc. shall pass to Frank Ransom. Third, he provided in paragraphs Fourth through Ninth, inclusive, for the creation of a testamentary trust. Upon payment of testator's debts and expenses, and satisfaction of the bequests specified in paragraphs Second and Third as noted above, the residue and remainder of testator's estate was to pass to the testamentary trust. Further, the Tenth and final provision of testator's will specifically appointed Frank Ransom as the executor of the estate, as noted above, and as the trustee of the testamentary trust created under the will.

---

[1] Josephine Ransom died testate on October 25, 1977, leaving a will dated April 27, 1945. The will of Josephine Ransom is the subject of a companion case for the construction of said will, that action being docketed in the Superior Court, Law Division—Probate Part, bearing Atlantic County Surrogate Docket No. 58833.

Plaintiffs' complaint is essentially founded in an alleged two-fold breach of duty by the trustee. First, plaintiffs aver that the executor breached the provisions of Article Sixth of the testator's will, which provided: "The interests of the beneficiaries hereunder shall not be subject to anticipation or to voluntary or involuntary alienation." Second, plaintiffs aver that the executor/trustee acted in derogation of the provisions of *R.* 4:26–3 and the provisions of *N.J.S.A.*3A:19–4. In substance, plaintiffs seek a determination by this court that a 1973 agreement between the executor/trustee and the primary beneficiaries under the testamentary trust was "void and without efficacy as to the testator's will," thereby arguably entitling plaintiffs to a one-third share in the testamentary trust created pursuant to the will of James Orville Ransom, Sr. Substantively, plaintiffs also seek to compel an accounting by the estate of Frank Ransom, deceased, executor and trustee under the will herein. Derivatively, plaintiffs sought a substitution of the executor and trustee under the will of James Orville Ransom and a revocation of the general letters testamentary issued to Rita Ransom as executrix of the will of Frank Ransom, the executor of the subject estate.

Upon the conclusion of the trial this court directed the Surrogate of Atlantic County to issue letters of substituted testamentary trusteeship to Theodore S. Ridgway, Esq. Said letters have been issued.

Defendant Marion Gandolfi has cross-claimed against defendant estate of Frank Ransom and the executrix thereof, alleging substantially the same cause of action as contained in plaintiffs' complaint. In addition to those allegations, defendant Gandolfi cross-claims that defendant Frank Ransom failed to give the required notice of intent to purchase trust asserts, as required by Article Fourth B of the will herein. Gandolfi also seeks a determination of this court that she is entitled to a one-third share of the corpus of the testamentary trust.

It is necessary at this point to detail more fully those provisions of testator's will which created and control the subject testamentary trust. The assets which passed to the testamentary trust pursuant to Article Fourth of the will included both personal property and certain real property situate in Hammonton, Atlantic County, New Jersey. Those assets are more particularly described in the estate's New Jersey Transfer Inheritance Tax Return (Form L–3) and United States Estate Tax Return (Form 706), the admissibility of which was stipulated to by all parties.

The most significant estate asset which passed to the trust and thereafter composed the bulk of the trust corpus was the Hammonton real estate and certain appurtenances thereto.

Under the terms of the will the testamentary trust was to continue during the life of the testator's widow and to terminate upon her death. Testator devised a life estate in the marital residence to his wife and directed that the trustee "shall pay all carrying charges on said home (including but not limited to such items as real estate taxes, sewer and water rents, insurance premiums and costs of repairs)." Additionally, the trustee was required to pay to the widow the sum of $200 a month. Of particular note is the provision of Article Fourth (A), subparagraph (4), which provides as follows:

> As much of the principal as trustee may from time to time think necessary for the care of my wife in case of unusual expenses incurred by my wife, such as arise from serious illness or other emergencies, shall be either paid to her or else supplied directly to her benefit by such trustee.

Upon termination of the life estate testator's children were entitled to the trust corpus and any accumulated income. Testator further provided: "The issue of any child predeceasing me to take the share his or her parent would have taken if living . . . ."

During the life estate Frank Ransom had the right to use and occupy the farmland and farm buildings, subject to his payment of certain costs necessary to the maintenance and operation thereof, and his obligation to pay to the trustee under the will

those sums necessary to enable the trustee of effect the provisions of the trust which were applicable to the widow/life tenant.

Upon the death of the life tenant and prior to the passage of title in the trust corpus to testator's children, the executor/trustee had a right to purchase the Hammonton farm property upon the payment of $10,000 to testator's son James Orville Ransom, Jr. and $13,000 to testator's daughter Marion Gandolfi. The terms of the will directed that the executor/trustee exercise that right within 30 days after the death of the life tenant and upon due written notice of his intent to purchase being provided to each of testator's children then living.

Essentially, the various alleged breaches of duty by the executor/trustee are the result of the execution of an agreement between and among the beneficiaries under the testator's will and testamentary trust, and the negotiations and discussions resulting therein. Both the complaint and Gandolfi's cross-claim allege that the participation by the executor/trustee in the procurement and execution of the agreement at issue was in violation of the duties heretofore cited.

At the threshold, it is necessary for this court to determine the right of plaintiffs to maintain this action, *vis-à-vis* the right of the cross-claimant Marion Gandolfi. This court finds that both the legal and factual positions of plaintiffs with respect to the cross-claimant are not concurrent.

Plaintiffs, as testator's heirs, clearly have standing to maintain the present action, which is in the nature of a will contest. Plaintiffs claim, however, that their right to relief is founded in their status as contingent remaindermen under the will and testamentary trust presently at issue, as evidenced by paragraph 4 of their complaint. All of plaintiffs' substantive allegations are founded upon their purported status as contingent remaindermen.

■ This court finds Article Fourth B of testator's will, as set forth above, to be dispositive of plaintiffs' interest herein. The, court finds that testators' children are the primary takers of the trust corpus upon the termination of the life estate. Further, it is this court's determination that plaintiffs herein are secondary takers of an original gift from testator. Significantly, however, the right of any issue (plaintiffs herein) to take their parents' share is conditioned upon the primary taker's predeceasing testator. Absent satisfaction of the conditions specified by testator, plaintiffs herein have no interest in the trust corpus under the terms of testator's will. *See Acken v. Osborn*, 45 *N.J.Eq.* 377 (Ch. 1889), aff'd 46 *N.J.Eq.* 607 (E. & A. 1890); *cf. Redmond v. Gummere*, 94 *N.J.Eq.* 216 (E. & A. 1922). Given the express provisions of testator's will and the survival of the primary taker herein, namely, plaintiffs' father James Orville Ransom, Jr., plaintiffs' interest under the will was extinguished at the time of testator's death. *Cf. Outcalt v. Outcalt*, 42 *N.J.Eq.* 500 (Ch. 1887); *Baldwin v. Tucker*, 61 *N.J.Eq.* 412 (Ch. 1901), aff'd 64 *N.J.Eq.* 333 (E. & A. 1901). This court finds that James Orville Ransom, Jr. held a vested remainder in the trust corpus, said remainder vesting at the time of testator's death. *See Litcher v. Trust Co. of New Jersey*, 11 *N.J.* 64 (1952). *See, also, Cody v. Fitzgerald*, 2 *N.J.* 93 (1949).

While the interest of James Orville Ransom, Jr. in the specific farmland was subject to a condition subsequent, to wit, Frank Ransom's absolute right to purchase same upon the termination of the life estate, that condition did not affect James' right to the proceeds of the sale thereunder. For these reasons this court holds that plaintiffs were not contingent remaindermen under the terms of testator's will, nor were the conditions satisfied which would have entitled them to any interest under the will as secondary takers of an original interest. The vested remainder of James Orville Ransom, Jr., upon vesting, would thereafter pass through his estate. For these reasons, this court grants judgment in favor of defendant Estate of Frank Ransom.

The cross-claim filed by Marion Gandolfi essentially alleges that the executor/trustee violated the anti-alienation provision contained in Article Sixth of testator's will and that Frank Ransom failed to obtain any form of judicial approval for the agreement entered into by the beneficiaries which effectively terminated the trust.

In assessing the conduct of the beneficiaries with respect to the execution of the agreement to terminate the trust, this court's primary function is to enforce testator's expressed intent with respect to the testamentary trust at issue. *Cinnaminson Tp. v. First Camden Nat'l Bank & Trust Co.*, 99 *N.J.Super.* 115 (Ch. Div. 1968); *Ohlson v. Bloomfield Savings Institute*, 9 *N.J.Super.* 545 (Ch. Div. 1950). This court finds that the plain language of Article Sixth of testator's will constitutes a "spendthrift trust" provision. When such a provision exists in a will it is necessary for the court to determine the extent of the restraint imposed, *L'Hommedieu v. L'Hommedieu*, 98 *N.J.Eq.* 554 (Ch. 1925). Such an evaluation is necessary in the present case in order to properly determine the cross-claimant's allegation with respect to the executor/trustee's purported violation of the spendthrift provision.

Based upon the demeanor and credibility of the witnesses, their testimony, exhibits introduced at trial, stipulations by the parties and the totality of circumstances, this court has made findings of fact with respect to the 1973 agreement abrogating the testamentary trust. Participating in the agreement were Josephine Ransom, widow of testator and life tenant, and the three children of testator: Frank Ransom, executor/trustee; Marion Gandolfi, defendant herein, the James Orville Ransom, Jr., father of plaintiffs herein. Prior to the execution of the agreement there were various discussions between and among the signatories thereto and at least some of the beneficiaries had the advice of legal counsel. The subject agreement was drawn by Lewis Farsetta, Esq., counsel for the estate. Rita L. Ransom testified that her husband James Orville, Jr. had consulted with

Clarence Mattioli, Esq. prior to executing the agreement. She further testified that she was dissatisfied with the terms of the agreement, but signed upon urging from her husband. Similarly, Marion Gandolfi testified that she signed the 1973 agreement of her own volition and without any extrinsic pressure from her brother Frank Ransom.

Under the terms of testator's will, the exercise by Frank Ransom of his absolute right to purchase would have resulted in a net payable to Marion Gandolfi in the amount of $13,000 and a net payable to James Orville Ransom, Jr. in the amount of $10,000. Additionally, the will provided that those payments could be deferred according to conditions specified in the will. This court finds that as a result of the 1973 agreement Gandolfi received a total of $23,000 and James Orville Ransom, Jr. received a total of $20,000, both sums paid in full and without any deferral. Additionally, pursuant to paragraph 4 of the 1973 agreement, James Orville Ransom and his wife Rita received an additional tract of land pursuant to a resubdivision that was not otherwise provided for in the testator's will.

As to the conduct of the executor/trustee, this court finds and determines that he was in fact dissatisfied with the provisions of testator's will. The court finds that this may have been a substantial element in his efforts to procure the 1973 agreement. The court finds that this fact was known to the signatory parties prior to their execution of the agreement. The court further finds that the executor/trustee represented to the signatory beneficiaries that estate and inheritance taxes in excess of the liquidity of the estate would be due and owing. The court finds the testimony in this regard to be admissible and evidential under *Booraem v. North Hudson Cty. R. R. Co.*, 40 *N.J.Eq.* 557 (E. & A. 1885), which this court views as consistent with the provisions of *N.J.S.A.*2A:81–2.

This court finds that the estate tax ultimately determined to be due and payable to the United States Internal Revenue Service was in the amount of $9,301.09, based upon a letter from

the District Director of the IRS dated October 1974. The actual amount, therefore, that was due and owing was within close proximity to the amount represented to be due and owing by the executor/trustee prior to the execution of the agreement. The court also finds that absent execution of the agreement by all parties concerned Frank Ransom had indicated that he would sell off certain frontage of the Hammonton farmlands. Under the provisions of testator's will the executor/trustee was vested with such authority.

This court finds, based upon its reading of testator's will and the testimony adduced at trial, that it was testator's intent to provide for his widow Josephine Ransom during her lifetime. It was for this purpose that the testamentary trust was created. Applying the applicable standard as set forth above, this court finds that the spendthrift provision in the will had a limited purpose, that purpose simply being to insure that Josephine Ransom would have shelter and care during her lifetime. Pursuant to the 1973 agreement the beneficiaries conveyed all their right, title and interest in the marital residence to the widow. The trustee specifically assumed those obligations under the trust instrument which were intended to provide for the health, welfare and support of his mother, Josephine Ransom. Pursuant to the agreement, Frank Ransom purchased outright from the trust the farmlands and appurtenances thereto which he would have been entitled to purchase at a subsequent point upon termination of the life estate.

This court finds that, in light of its prior determination, the spendthrift trust had a limited purpose, to wit, the care and support of Josephine Ransom, the conveyance of the marital residence to Josephine Ransom and the contractual agreement by which Frank Ransom agreed to provide all necessary care consistent with the trust instrument constituted an adequate safeguard as to the testator's purpose in light of the totality of the circumstances to date. This determination is founded upon the facts of this case. This court in no way intimates that as a

rule the protective provisions of a spendthrift trust may be abrogated by a consensual agreement among all beneficiaries under the terms of that trust. This court finds, however that where a spendthrift trust is created for the protection of a life tenant, and all remaindermen thereunder agree to a termination of the trust, they are estopped from seeking to enforce the spendthrift provision subsequent to the death of the life tenant.

Since it has been determined that the spendthrift provisions of the testamentary trust had a limited purpose and were adequately substituted, the court must analogously consider whether the termination of the trust agreement by the remaindermen was valid. The general rule in this jurisdiction with respect to the termination of a trust by the beneficiaries, prior to its preordained termination, is conditioned upon satisfaction of a two-fold test which requires, first, that the beneficiaries be *sui juris* and, second, that continuation of the trust is not necessary to carry out a material purpose for which it was created. *Fidelity Union Trust Co. v. Margetts*, 7 *N.J.* 556 (1951). In the present case the court finds that the signatories to the 1973 agreement were *sui juris* and that the purpose for which the trust was created was adequately protected under the terms of the agreement as heretofore noted.

The court further finds that the signatories to the 1973 agreement were fully apprised of all the facts relating to the termination of the trust agreement, inclusive of the executor/trustee's dissatisfaction with the terms of the will. The court finds that each of the signatories profited to a degree substantially in excess of that to which they would have been entitled had the trust terminated according to its terms. Effectively, the remaindermen ratified the trustee's purchase of the farmlands pursuant to the agreement terminating the trust. This court will not void the 1973 agreement based upon the alleged breach of Article Sixth of the testator's will.

Gandolfi's cross-claim further alleges that the 1973 agreement is violative of *R.*4:26–3, in that the trustee failed to obtain

court approval of the trust corpus. While the will itself provided the trustee with broad rights to sell trust property without court approval, the court need not address the validity of that provision in the present case. This court finds that the purchase of trust real estate by a fiduciary is governed by the provisions of *N.J.S.A.*3A:19–4.[2] This court finds the aforecited statute to be a fundamental limitation upon a fiduciary's right to purchase trust property. It appears to this court that, in order to effectuate the public policy contained in *N.J.S.A.*3A:19–4, the purchase of real property by a fiduciary in derogation of this statute would render that purchase voidable upon application by the proper party to a court of competent jurisdiction. Gandolfi is not such a party.

This court finds guidance in the case of *Staats v. Bergen*, 17 *N.J.Eq.* 297 (Ch. 1865), aff'd 17 *N.J.Eq.* 554 (E. & A. 1865). While *Staats* was decided prior to the adoption of the present statute under consideration, the rule established therein may be applied consistent with present statutory mandate. In *Staats* the master outlined the general rule applicable to the present case as follows:

> ... [I]t is a general rule, applicable to sales, that when a trustee, or any person acting as agent for others, sells a trust estate, and becomes himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled, as of course, in his election, to acquiesce in the sale, or to have the property reexposed to sale, under the direction of the court and to be put up at the price bid by the trustee; and it makes no difference, in the application of the rule, that the sale was at public auction, *bona fide*, or for a fair price. [17 *N.J.Eq.* at 306 *citing* 4 *Kent's Com.* (3 ed.) 438].

---

[2] When the superior court finds that it would be to the advantage of an estate, trust or guardianship for the fiduciary thereof to purchase real estate held therein or by the decedent, it may permit him to purchase the same for *such price and upon such terms as the court may approve.*

Nothing contained in this section shall authorize the sale of any real estate where the fiduciary is not authorized to do so by the terms of the will or other instrument, from which he derives his authority, by the direction of a court or by a statute of this state. Nor shall anything contained in this section authorize the purchase of any real estate by a fiduciary where there is a cofiduciary, without the concurrence of such cofiduciary.

Based on the facts before it, this court finds and determines that the cross-claimant Marion Gandolfi acquiesced in the sale of the Hammonton farmlands by the trust to the trustee Frank Ransom. Said consent was volitional and absent any undue influence or duress. Further, this court finds that Marion Gandolfi received sufficient consideration so as to render the agreement binding, said consideration having been detailed above. Having acquiesced in the sale and benefited directly therefrom, Gandolfi is not entitled to seek relief from this court under the provisions of *N.J.S.A.*3A:19–4. She is bound by her acquiescence. Given a valid acquiescence, the evolution of circumstances unforeseen by the parties at the time of the agreement or by a change of heart would not entitle her to the relief requested.

Accordingly, with respect to the cross-claim of Marion Gandolfi, this court enters judgment in favor of defendant Estate of Frank Ransom and its executrix.

Upon the entry of final judgment by this court, the substituted trustee will be discharged.