871 A.2d 103

IN THE MATTER OF THE ESTATE OF WILLIAM BONARDI.

Superior Court of New Jersey
Appellate Division

Argued March 7, 2005—Decided April 5, 2005.

510

Before Judges PARRILLO, GRALL and RIVA.

*Robert F. Binetti* argued the cause for appellant, the Estate of William Bonardi.

*Patrick J. Jennings* argued the cause for respondent, Donna Bonardi.

*Jeffrey C. Mason* argued the cause for respondents, Danielle Bonardi and Jessica Bonardi.

The opinion of the court was delivered by

PARRILLO, J.A.D.

This is an appeal from a judgment of the Superior Court, Chancery Division, certified as final, *Rule* 4:42–2, permitting termination of a testamentary trust. For the following reasons, we reverse.

William Bonardi died testate on March 9, 2002, survived by his wife, Donna, and his two daughters, Danielle and Jessica. At the time of his death, Danielle was eighteen-years old and Jessica was sixteen-years old. Although decedent's Will included some specific bequests to other individuals, his wife and two daughters were the primary beneficiaries under separate testamentary trusts, each made up of one-half of the residuary estate. Stephen F. Pellino, decedent's friend, was named Executor of decedent's estate and Trustee of the two testamentary trusts.

The first trust named plaintiff, Donna Bonardi, as the income beneficiary and devised the remainder to Danielle and Jessica. The second trust named the daughters as the only beneficiaries. In both instances, the daughters were not entitled to outright distribution of their interest before they reached the age of twenty-five.

Under the first trust, plaintiff's interest was subject to several terms and conditions. Paragraph TENTH of decedent's Will reads, in pertinent part:

> For the duration of the life of my wife, DONNA, the Trustee shall pay her or apply towards her benefit, all of the net income of this trust. In addition, the Trustee may pay to her or apply to her benefit such amounts of the principal of the Trust as the Trustee, in the exercise of the Trustee's absolute discretion, deems advisable for her welfare. In deciding to make such distributions of principal to or for DONNA'S benefit, the Trustee shall be guided by the following statement of my purposes and intentions: *It is my expectation that the trust income and principal will not be made available to provide primary support for the beneficiary,* as I expect that DONNA in complete or large

measure will support herself. *I further direct that my Trustee shall, to the extent possible, not make payments to DONNA out of principal unless necessary, and that he rather seek to preserve the corpus, to the extent possible, for ultimate distribution to my children or survivor of them.* My Trustee shall have complete authority to make these determinations which I direct shall not be subject to legal challenge. In making determinations as to distributions of principal for DONNA'S benefit, I ask that my Trustee be mindful of the standard of living that we maintained during my lifetime.
[emphasis supplied.].

Explaining the limitations imposed pursuant to this paragraph, Pellino certified that decedent had expected his wife, who had gone to school and obtained a nursing degree during the marriage, to work in the nursing field on a full-time basis after his death. According to Pellino, decedent was also concerned about "his wife's inappropriate use of alcohol" and feared "that if the estate's assets were left to Donna outright, she would continue to lead this lifestyle which he felt was inappropriate, unhealthy and against his wishes." Further, decedent "did not want the proceeds of his hard work to be used for the benefit of any future boyfriend or husband that Donna might choose." None of these concerns, however, was expressly addressed by a spendthrift provision in the trust or anywhere else in the Will.

Even so, decedent evidenced his intent elsewhere in the Will. Notably, paragraph ELEVENTH, which concerned the daughters' trust, provided that "the trust income and principal will not be made available for primary support for the beneficiary as I expect that my wife will contribute to their support...." Further, paragraph TWELFTH granted the Trustee the exclusive right to "deal with [the] corpus and the income of such trusts." Only if the accumulated income from the trust was insufficient could the Trustee invade the principal.

A dispute eventually arose between plaintiff and the Executor/Trustee over the amount necessary for plaintiff's support. Plaintiff claimed that because she was only able to work part-time due to chronic medical problems, her living expenses exceeded her income, including the amounts made available to her by the Trustee under the first testamentary trust. Essentially, she

complained that Pellino was improperly withholding principal necessary for her support and requested immediate distribution of all principal in the trust.

While acknowledging that plaintiff's payments from the trust had decreased over time, Pellino insisted the reductions were necessary to preserve the corpus and carry out the trust's purpose. He explained that he initially allowed plaintiff to control all the finances in order to ease the transition after her husband's death, and that he paid her $8,000 per month when he first took over as Trustee, but that she was advised the payments would be reduced because she was expected to work and contribute towards her own support. As significantly, Pellino certified that the net monthly income from Donna's trust was only $2,845, yet he was paying plaintiff $4,545 per month, thereby depleting the principal by as much as $1,700 per month. Pellino also disputed plaintiff's assertion that she could only work part-time, stating that she had "resisted any discussion of where she works, how much she earns, how many hours she works, and why she is unable to earn more."

On account of this impasse, on December 16, 2003, plaintiff filed an action in the Chancery Division to compel formal accountings of her husband's estate and the testamentary trust created on her behalf, and to direct the immediate distribution to her of all net income as well as principal held pursuant to that trust necessary to maintain the marital standard of living. Simultaneously, decedent's two daughters filed a separate complaint, also seeking a formal estate accounting and distribution of income and/or principal from the second trust created under their father's Will for their exclusive benefit. On the return date of the orders to show cause, the trial judge issued a consolidated order requiring the Executor to provide an informal accounting by March 15, 2004, and to examine the financial requests of the beneficiaries "in the context of their needs and the intent of the testator." Pursuant to that order, Pellino rendered a timely accounting, and plaintiffs' counsel was given an opportunity to examine all of the estate's financial records. Sometime thereafter, the two complaints were

consolidated and the action proceeded on the respective claims for distribution under a single docket number.

On May 12, 2004, Danielle and Jessica Bonardi executed a waiver of their remainder interest in the trust established on behalf of their mother so that the corpus could be immediately distributed to her. Pellino, however, refused to accept the waiver. As a result, the daughters filed a motion to terminate the testamentary trust, supported by certifications stating they understood they would inherit one-half of the trust principal upon their mother's death, but believed it was in their best interest if the trust were terminated and the corpus made immediately available to their mother. At the time, both daughters were living with their mother and under the age of twenty-five: Danielle, being only twenty years old, and Jessica, eighteen.

Following oral argument, the judge granted the motion and terminated the testamentary trust, directing distribution of the daughters' remainder interest in trust principal to plaintiff, Donna Bonardi. Mistakenly believing that "all beneficiaries [were] at least twenty-one years old," the judge reasoned in part:

New Jersey permits the termination of a trust upon consent of all beneficiaries (even if the trust is discretionary) where the income beneficiary is different from the remainder beneficiary. 6 Clapp, *New Jersey Practice: Wills and Administration* § 543 (3d ed.1982). This is so because the testator did not establish the trust because of an especial lack of confidence in the income beneficiary's ability to manage the fund. *Id.* Instead, the testator may possibly have wished to save estate and inheritance taxes on the income beneficiary's death, or he may have had some other motive. *Id.* In any event, there being no other manifestation of intention in the Will bearing on the subject, the testator probably would not object if all the beneficiaries consent to the termination of the trust. 3 Scott, Trusts § 337.1.

On appeal, the Executor/Trustee maintains, among other things, that termination of the testamentary trust frustrates and defeats the express intent of the testator and is, therefore, impermissible. He further argues that the judge's finding that the testator's probable intent was to the contrary was unsupported by the evidence and constituted error. We agree with those contentions and reverse.

 It is well-settled that a court's primary function is to enforce the testator's expressed intent with respect to a testamentary trust. *Fidelity Union Trust Co. v. Margetts*, 7 *N.J.* 556, 566, 82 *A.*2d 191 (1951); *In re Ransom Testamentary Trust*, 180 *N.J.Super.* 108, 117, 433 *A.*2d 834 (Law Div.1981); *Cinnaminson Tp. v. First Camden Nat'l Bank & Trust Co.*, 99 *N.J.Super.* 115, 127, 238 *A.*2d 701 (Ch.Div.1968). Our duty is to "uphold testamentary dispositions of property, made through the medium of trusts, instead of searching for reasons for avoiding them, or dealing with them with any degree of disfavor." *Fidelity Union, supra*, 7 *N.J.* at 565, 82 *A.*2d 191 (internal citation omitted). In this regard, the whole will must be examined to ascertain the purpose of the testator. *Ibid.*

 To be sure, all the beneficiaries of a testamentary trust can consent to the trust's termination if none of them is under an incapacity and continuance of the trust is no longer necessary to carry out a material purpose of the trust. *Fidelity Union, supra*, 7 *N.J.* at 566, 82 *A.*2d 191; *In re Ransom Testamentary Trust, supra*, 180 *N.J.Super.* at 120, 433 *A.*2d 834; *Restatement (Second) of Trusts* § 337 (1959). Thus, if all of the purposes of the trust have been carried out, or if the only purpose remaining unfulfilled is to confer upon certain beneficiaries interests successively in possession and in remainder, then all persons in interest, if they are *sui juris*, may jointly compel termination of the trust. *Bd. of Dir. of Ajax Electrothermic Corp. v. First Nat'l. Bank of Princeton*, 33 *N.J.* 456, 465, 165 *A.*2d 513 (1960) (*Ajax II*); 6 Alfred C. Clapp et al., *New Jersey Practice Series* § 543 (3d Ed.1982).

 On the other hand:

> If a trust is created for successive beneficiaries and it is not the only purpose of the trust to give the beneficial interest in the trust property to one beneficiary for a designated period and to preserve the principal for the other beneficiary, but there are other purposes of the trust which have not been fully accomplished, the trust will not be terminated merely because both of the beneficiaries desire to terminate it, or one of them acquires the interest of the other.

> [*Restatement (Second) of Trusts, supra*, § 337 comment g.].

Indeed, one of the conditions which must exist before a trust will be accelerated or terminated, even upon application of all the parties in interest, "is that every reasonable ultimate purpose of the trust's creation and existence has been accomplished and that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result." *Fidelity Union, supra,* 7 *N.J.* at 570, 82 *A.*2d 191.

Even where the beneficiary is the sole party in interest and of full age, and the trust is not a spendthrift trust, the beneficiary may not automatically have it terminated, irrespective of the creator's intention. Where, for instance, the trustee has active duties, the trust is not terminable as a matter of right at the demand of the beneficiary, even though the beneficiary is given the disposition at death. *Id.* at 564, 82 *A.*2d 191.

Further, spendthrift trusts, trusts for support of a beneficiary, and discretionary trusts cannot be terminated by consent of the beneficiaries. *Restatement (Second) of Trusts, supra,* § 337 at comments l, m, and n. This is because the material purpose of a spendthrift trust is to prevent anticipation or control of future income or corpus by the protected income beneficiary and, therefore, acceleration of the trust would directly contravene the testator's intent. *Heritage Bank–North, N.A. v. Hunterdon Medical Center,* 164 *N.J.Super.* 33, 36, 395 *A.*2d 552 (App.Div. 1978). Moreover, "even if not of an express spendthrift nature, a trust nevertheless created for the primary purpose of ensuring the beneficiary's support and maintenance is not terminable by consent since such termination would obviously also contravene testamentary intent." *Ibid.* And, the fact that a trustee has the power to invade the corpus for the beneficiary's benefit does not negate a testator's intent to establish such a trust. *Id.* at 37, 395 *A.*2d 552. In short, "[t]he question for determination is whether the settlor had any other purpose in mind than to enable the beneficiaries to successively enjoy the trust property." *Baer v. Fidelity Union Trust Co.,* 133 *N.J. Eq.* 264, 266, 31 *A.*2d 823 (E & A 1943).

■ Here, a material purpose of the trust not only still remains, but would be soundly defeated by the daughters' renunciation of trust corpus in favor of their mother, the income beneficiary whose right to principal was expressly limited under the terms of the trust. First and foremost, the request is not simply to terminate the trust and accelerate distribution to the intended successive beneficiaries, but quite the opposite, to divest the remaindermen of their interest and divert the trust corpus instead to the income beneficiary. This, however, is directly contrary to the express testamentary plan, evident from the face of the language of the Will itself. As stated in paragraph EIGHTH and provided for in paragraph TENTH, the clear purpose of the trust is to preserve the corpus for the ultimate benefit of decedent's daughters "per stirpes and not per capita." Thus, if one or both of the daughters were to predecease plaintiff, their children—decedent's grandchildren—would acquire their mother's interest in the trust. However, if the relief requested were to be granted, not only would Danielle and Jessica be divested of their remainder interest, but the rights of the putative grandchildren would be defeated as well, cf. *In re Estate of Branigan,* 129 *N.J.* 324, 609 *A.*2d 431 (1992), thereby frustrating the testator's clear intent. Plainly, in this instance, acceleration and termination of the trust would have resulted in a distribution to a person other than those intended by the testator. *Cf. Ajax Electrothermic Corp. v. First Nat. Bank of Princeton,* 7 *N.J.* 82, 87–88, 80 *A.*2d 559 (1951) (*Ajax I* ).

Another purpose of the trust, evidenced in paragraph TENTH, was to provide supplemental support and maintenance for plaintiff without making trust income and principal "available to provide primary support." Rather, the announced expectation was that plaintiff would "in complete and large measure" support herself and "contribute to [the daughters'] support as may be appropriate to their age and circumstance from time to time." In fact, payments out of principal were not to be made to plaintiff unless absolutely necessary for her welfare. And, in making this determination, the trustee was vested with "absolute discretion." In-

deed, the express terms of the Will divested plaintiff of actual control over the estate's assets. Thus, the creation of a trust with "complete authority" in a trustee evidences testator's plain intent to deny plaintiff immediate distribution of, or control over, distribution of trust corpus. *See Heritage Bank, supra,* 164 *N.J.Super.* at 37, 395 *A.*2d 552.

It also demonstrates the testator's intent to insulate trust principal from any control exerted by the daughters during their mother's lifetime. The language of paragraph EIGHTH, which states that neither Danielle nor Jessica is entitled to her respective remainder share before she reaches the age of twenty-five, supports this construction. By selecting a specific age as the earliest time at which his daughters may receive outright distribution of principal, the testator implicitly negated their ability to affect the trust before then. Yet, when Danielle and Jessica made the mutual decision to renounce their respective remainder interests, they were only twenty and eighteen years of age respectively, living with their mother, and presumably still under her influence. *Cf. Archard v. Mesmer,* 110 *N.J.Super.* 560, 562, 266 *A.*2d 314 (App.Div.1970) (holding that mutual promises, unsupported by valuable consideration, to equally divide expected interests in an estate will ordinarily not be enforced because they thwart the plain wishes of the testator and are fraught with opportunities for fraud). Clearly, such decision-making by those otherwise ineligible under the explicit terms of the Will contravenes the testator's plain intent. And, the expressed wishes of the testator to preserve trust corpus for the benefit of his children or their survivors simply cannot be reconciled with the family settlement struck in this case that achieves diametrically opposite results. The named remaindermen not having yet attained the age to exert control over the trust corpus, a material purpose of the trust still exists and would be completely frustrated by its premature termination and distribution of principal to plaintiff, an unintended beneficiary.

Plaintiff's reliance on *Ajax II, supra,* to justify the relief sought in this case is misplaced. *Ajax II* dealt with a situation exactly opposite of that presented herein, involving not a renunciation by the remaindermen, but rather a waiver by a life tenant who was entitled to a fixed monthly disbursement. 33 *N.J.* at 460, 165 *A.*2d 513. In return for her release of her $150 per month life interest in the trust, the corporate remainderman established an annuity that provided the life tenant with a benefit greater than that which she was receiving under the testamentary trust. *Ibid.* The Court found this circumstance consistent with the testator's intention and, therefore, sufficient to justify acceleration and termination of the trust so that the intended beneficiaries could immediately receive distribution of the corpus. *Id.* at 469, 165 *A.*2d 513. Here, of course, the relief requested would not result in an accelerated distribution of trust corpus to the intended beneficiaries, but rather a diversion of principal to someone expressly ineligible under the trust.

We disagree with the trial court's construction of the Will to the contrary. We find no basis in the record, or in the rather plain language of the testamentary instrument, for the judge's conclusions that the testator "did not establish the trust because of an especial lack of confidence in the income beneficiary's ability to manage the fund[,]" and that "the testator may possibly have wished to save estate and inheritance taxes on the income beneficiary's death, or he may have had some other motive." The former, in fact, is belied by the record evidence and the latter amounts to no more than rank speculation. Although we are sensitive to the deference to which the trial court's findings are entitled, that deference is predicated upon adequate evidentiary support for those findings. *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 483–84, 323 *A.*2d 495 (1974). Our review of the record constrains us to conclude that the evidence did not warrant the determination that "the testator probably would not object if all the beneficiaries consent to termination of the trust."

We are convinced of just the opposite. The relief requested here defeats the testamentary plan, evidenced from the face of the instrument itself, and contravenes the expressed wishes of the testator.

Reversed.