**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5239-18T3

MARY ANN SCHULTZ, by her
attorney-in-fact, DONNA
SCHULTZ, ESTATE OF ROBERT
SCHULTZ, SR., by its administrator,
DONNA SCHULTZ, and DONNA
SCHULTZ individually,

      Plaintiffs/Respondents-
      Cross-Appellants,

v.

KATHLEEN GLASSER, EXECUTOR
OF THE ESTATE OF ROBERT R.
SCHULTZ, JR. and KATHLEEN
GLASSER, individually,

      Defendants-
      Third-Party Plaintiffs/
      Appellants-Cross-Respondents,

v.

THE SCHULTZ FAMILY LIVING
TRUST,

      Third-Party Defendant.

_____

Argued January 6, 2021 – Decided January 27, 2021

Before Judges Yannotti, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. C-000075-18.

Michael Confusione argued the cause for appellants/cross-respondents (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

Ellen M. McDowell argued the cause for respondents/cross-appellants (McDowell Law, PC, attorneys; Ellen M. McDowell and Rachel B. Brekke, on the briefs).

PER CURIAM

Defendants Kathleen Glasser (Kathleen)[1] individually and as executor of the Estate of Robert Schultz, Jr. (Bobby) appeal, and plaintiffs Mary Ann Schultz (Mary Ann) by her attorney-in-fact, the Estate of Robert Schultz, Sr. (Robert) by its administrator, and Donna Schultz (Donna), cross-appeal from a June 21, 2019 judgment entered following a trial.  We affirm.

---

[1]  We utilize the parties' first names to reflect how they are referred to in the appellate record and because some of them share a common surname.  We intend no disrespect.

Robert and Mary Ann were married and had two children: Bobby and Donna. In 1996, Robert and Mary Ann, as the grantors and initial trustees, created the Schultz Family Living Trust.

The Trust listed the "immediate family group" as the "grantors' children," Bobby and Donna. The Trust also listed the beneficiaries as Robert, during his lifetime; Mary Ann, during her lifetime; Bobby, "upon the death of the surviving grantor"; and Donna, "upon the death of the surviving grantor." Therefore, Bobby and Donna became the beneficiaries of the Trust only if Robert and Mary Ann were deceased. Robert died in 2014, leaving Mary Ann as the surviving grantor.

The Trust owned properties in South Carolina, Maryland, and Manalapan. The Trust contained a schedule for "Specific Gifts for Distribution," indicating Bobby would receive "the real property located in New Jersey." The Trust also contained an "Alternate Beneficiary Distribution" provision stating: "If the deceased final beneficiary has no surviving children, then his or her share shall be distributed immediately to the surviving named final beneficiary."

In 1998, the Trust purchased the Manalapan property for $300,002. Bobby lived on the property from 1998 until his death in January 2018. He paid the property taxes on the home. Bobby was unmarried and had no children.

A-5239-18T3

On December 20, 2017, weeks before his death, Bobby signed a quitclaim deed for the Manalapan property, which stated he was the "trustee of the Schultz Family Living Trust." The deed purported to transfer ownership of the Manalapan property from the Trust to Bobby and Donna's cousin Kathleen as joint tenants with the right of survivorship. Bobby also listed Kathleen as the sole beneficiary of his will.

With regard to the South Carolina property, Kathleen testified she prepared a quitclaim deed for the property at the behest of Mary Ann in March 2017. She testified Mary Ann wished to transfer the property out of the Trust and to Bobby because he "was going there a lot and he was looking to move there." Mary Ann signed the quitclaim deed on March 10, 2017, transferring the South Carolina property out of the Trust and to Bobby personally.

On May 3, 2018, plaintiffs filed a complaint claiming Bobby breached his fiduciary duty to the beneficiaries of the Trust and sought judgment against Kathleen, declaring the transfer of the Manalapan property to her null and void. Plaintiffs argued the Manalapan property belonged to the Trust, not to Bobby's estate, and Bobby had no legal or equitable rights to the property.

Defendants asserted a claim for equitable relief, seeking the imposition of a resulting or constructive trust because Bobby paid $163,000 of the $300,002, or 54.33 percent, of the purchase price of the Manalapan property.

Judge Katie A. Gummer tried the matter over the course of five days, during which Donna and Kathleen testified. The judge found neither witness credible. She stated "part of Donna's testimony was based on pure and utter speculation . . . as to what was discussed between her brother and their parents. Speculation about transactions of which she had no part." The judge found:

> Kathleen was even less credible than Donna. Her pleadings alone demonstrated her lack of credibility.
>
> She testified that Bobby would never harm his mother, yet in her answer she admitted that he had executed a deed to convey title of the New Jersey property to himself and to Kathleen, a transfer that could only serve to hurt his mother.
>
> She denied in her answer . . . the allegation that Bobby had taken possession of two vehicles owned by Robert. But in her testimony acknowledged that he had taken those vehicles.
>
> Her testimony about what payments Bobby made with respect to the . . . Manalapan property[] was really [ninety-nine] percent speculation.
>
> . . . .
>
> One thing in particular that demonstrated to the [c]ourt her utter lack of credibility was testimony

regarding Bobby's relationship with his mother, . . . especially during the time period when his mother was living with Bobby.

Kathleen testified . . . with no qualification, that Bobby would never . . . take money from her, would never use her ATM card.

But it's clear reviewing the records provided to the [c]ourt that in fact Bobby was using his mother's ATM card.

The judge stated: "This case is notable in that the three people who would have . . . the most knowledge as to what happened, didn't testify. Obviously[,] Robert and Bobby could not testify because they're deceased. Mary Ann did not testify and in fact no one deposed her." As a result, the judge found "[n]o one actually involved in [the Manalapan property] transaction [was] called to testify. So the [c]ourt largely was left with analyzing the case based on the documents presented and through those documents the behavior of the parties who actually were involved in the transactions at issue."

Regarding the Manalapan property, defendants adduced in evidence the December 2017 deed signed by Bobby in which he referred to himself as trustee of the Trust. The judge noted "according to defendants [the deed] forms the legal basis to remove the Manalapan property from the Trust and . . . gift it to Bobby and Kathleen." The judge stated:

6

The defendants' case with respect to the Manalapan property is premised on their argument that Bobby was the settl[o]r because . . . he had effectively purchased the property. And that as the settl[o]r, he had the right to amend the Trust which according to defendants he did so by executing this purported quit[]claim deed. . . .

The [c]ourt cannot conclude that Bobby was a settl[o]r of the Trust. The reason for the payments that defendants assert form the basis of their argument that he was a settl[o]r, were based on pure speculation as to the purpose of those purported payments . . . .

. . . .

The reasons for the exchange of funds between Bobby and his parents are unknown to this [c]ourt.

The judge concluded Bobby never identified himself as the settlor and had no authority to execute the deed as either a settlor or trustee because the Trust designated Robert and Mary Ann as the sole trustees during their life and Mary Ann was living when the property transaction took place. The judge concluded Bobby violated his fiduciary duty to the beneficiaries of the Trust, voided the deed transferring the Manalapan property, and found defendants had neither a legal nor equitable interest in the Manalapan property.

At trial, plaintiffs contended Bobby and Kathleen conspired to exert undue influence on Mary Ann to transfer the Manalapan property out of the Trust. As a result, they sought attorney's fees. Judge Gummer denied these claims because

7

Kathleen had no fiduciary duty to the Trust's beneficiaries and because there was not "enough evidence . . . to conclude that Kathleen knew that the . . . quit[]claim deed was premised on a lie."

I.

Our review of a trial court's findings in a non-jury case is limited. Seidman v. Clifton Savs. Bank, S.L.A., 205 N.J. 150, 169 (2011). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Ibid. (last alteration in original) (quoting In re Tr. Created By Agreement Dated Dec. 20, 1961, 194 N.J. 276, 284 (2008)).

"Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Because a trial court hears the case, sees and observes the witnesses, and hears them testify, it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Deference is also appropriate because "[i]n fashioning relief, [a] Chancery [court] has broad discretionary power to adapt equitable remedies to the particular circumstances

of a given case." Marioni v. Roxy Garments Delivery Co., Inc., 417 N.J. Super. 269, 275 (App. Div. 2010).

On appeal, defendants argue: (1) the judge misapplied New Jersey law by denying Bobby's estate any relief with regard to the Manalapan property; (2) the deed should be amended to provide Bobby's estate with a 54.33 percent share of the property; (3) Bobby was a settlor of the Trust and had the power to revoke Robert's contributions to the Trust; (4) the judge erred by refusing to impose a constructive trust declaring Bobby's estate a 54.33 percent owner of the property; and (5) the judge erred by refusing to require Robert's estate to reimburse Bobby's estate for $163,000 he allegedly paid for the purchase of the property and $79,403 he allegedly paid for capital improvements.

Plaintiffs' cross appeal contends the judge erred by not allowing them to amend the complaint to assert a claim of undue influence regarding the South Carolina property. Plaintiffs claim the judge erred by failing to award Robert's estate litigation costs and attorney's fees as tort damages for the undue influence.

We affirm for the reasons expressed in Judge Gummer's thorough and well-reasoned oral opinion. We add the following comments.

## A. Defendants' Appeal

"It is well-settled that a court's primary function is to enforce the testator's expressed intent with respect to a testamentary trust." In re Est. of Bonardi, 376 N.J. Super. 508, 515 (App. Div. 2005). The court's "duty is to 'uphold testamentary dispositions of property, made through the medium of trusts, instead of searching for reasons for avoiding them, or dealing with them with any degree of disfavor.'" Ibid. (quoting Fid. Union Tr. Co. v. Margetts, 7 N.J. 556, 565 (1951)).

"[T]he goal always is the ascertainment of the testator's intent and it is not to be thwarted by unduly stressing 'the literal meaning' of his [or her] words." In re Tr. of Nelson, 454 N.J. Super. 151, 158 (App. Div. 2018) (first alteration in original) (quoting Fid. Union Tr. Co. v. Robert, 36 N.J. 561, 565 (1962)). Examining the probable intent of a trust is a two-step process, first involving the interpretation of the existing trust, and then, when warranted by evidence, reformation. Nelson, 454 N.J. Super. at 159-60 ("[R]eformation involves remaking or modifying an instrument, to correct mistakes, to fulfill an unexpressed intention, or to address circumstances that were unforeseen."). "The preponderance-of-the-evidence standard of proof applies to interpretation;

however, the more rigorous clear-and-convincing standard of proof applies to reformation." Id. at 160.

Here, there was no difficulty surmising testator's intent because the Trust was clearly worded, and Bobby was never designated as a trustee. The unambiguous language of the Trust expressly stated Bobby would receive the Manalapan property only if he survived Robert and Mary Ann. Further, the Trust contemplated a scenario where Bobby predeceased a surviving grantor. Indeed, the Trust included an "Alternate Beneficiary Distribution" provision, which stated: "In the event that . . . [Bobby or Donna] predeceases the surviving Grantor" and the deceased final beneficiary has no surviving children, "then his or her share shall be distributed immediately to the surviving named final beneficiary." Therefore, as here, where Bobby predeceased Mary Ann and had no surviving children, his share would have to be distributed to Donna, not Bobby's estate.

Furthermore, N.J.S.A. 3B:31-3 defines a settlor as

> a person, including a testator, who creates, or contributes property to, a trust. If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion.

Additionally, a constructive trust should "be impressed in any case where to fail to do so will result in an unjust enrichment." D'Ippolito v. Castoro, 51 N.J. 584, 588 (1968). "Generally all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, [or] undue influence . . . which has resulted in a transfer of property." Id. at 589.

We have no reason to second guess Judge Gummer's detailed fact and credibility findings that defendants failed to meet their burden of proof to establish Bobby was a settlor. As the judge noted, the proofs presented allegedly showing Bobby purchased the Manalapan property were not persuasive. Nor is there any evidence to convince us the judge erred by not imposing a constructive trust or reimbursing Bobby's estate for the funds he allegedly spent for the benefit of the Trust. The preponderance of the evidence showed the quitclaim deed improperly removed the property from the Trust and to let the transaction stand would unjustly enrich defendants. Also, defendants did not meet their burden to prove an entitlement to reimbursement of the funds allegedly spent.

B. Plaintiffs' Cross-Appeal

The power to permit a party to amend its pleadings is left to the sound discretion of the trial judge. R. 4:9-1. The "exercise of discretion requires a

two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006). "[T]he factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation." Bonczek v. Carter-Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997). We review such determinations for an abuse of discretion. Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994).

"[U]ndue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets . . . ." In re Est. of Folcher, 224 N.J. 496, 512 (2016) (alteration in original) (quoting In re Est. of Stockdale, 196 N.J. 275, 302-03 (2008)). "[W]hen there is a confidential relationship coupled with suspicious circumstances, undue influence is presumed and the burden of proof shifts to the will proponent to overcome the presumption." Folcher, 224 N.J. at 512 (quoting Stockdale, 196 N.J. at 303).

Judge Gummer found plaintiffs pled neither a confidential relationship nor a lack of capacity on Mary Ann's part to support an undue influence claim. She stated:

> Even applying the liberal standard that the [c]ourt must, searching the complaint in depth and with liberality, the [c]ourt does not see the fundament of a cause of action based on undue influence.
>
> . . . [T]hat in and of itself is enough to keep it out of the case. It is grossly unfair to a defendant to raise at the last minute an undue influence claim not present in the complaint. It prevented . . . defendants from being able to bear any burden that shifted to them based on the existence of a confidential relationship.

We are unconvinced the judge abused her discretion.

Finally, we review a trial judge's determination whether to assess attorney's fees for an abuse of discretion. Mears v. Addonizio, 336 N.J. Super. 474, 479-80 (App. Div. 2001). Plaintiffs cite In re Estate of Lash, 169 N.J. 20, 27 (2001) and argue the judge should have awarded attorney's fees as tort damages for defendants' breach of fiduciary duty. Lash is inapposite because there, our Supreme Court held attorney's fees are compensable in tort where the breach of fiduciary duty arises from an attorney-client relationship, which did not exist here. Id. at 34; see also Innes v. Marzano-Lesnevich, 224 N.J. 584, 596 (2016).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14